[No. 39666.    En Banc.    November 24, 1967.]

VERNON J. REAGLES *et al., Appellants,* v. ROBERT W. SIMPSON *et al., Respondents.**

*Reported in 434 P.2d 559.

*Aiken, St. Louis & Siljeg,* by *Charles E. Siljeg,* for appellant Brewer.

*The Attorney General* and *Edward B. Mackie, Assistant,* for respondents.

*Williams, Lanza, Kastner & Gibbs,* by *Henry E. Kastner,* amicus curiae.

*H. Joel Watkins, Copass, Franklin & Watkins, Daniel F. Sullivan, Sullivan, Burton & Meade, Harold A. Pebbles, Pebbles, Swanson & Lindskog, Wilbur J. Lawrence,* and *Lane, Powell, Moss & Miller,* amici curiae.

HUNTER, J.—This case comes before us on an appeal from a judgment of the Thurston County Superior Court, dismissing an application for review by certiorari of orders of the Washington State Board of Medical Examiners, defendants (respondents), (1) accrediting the Washington College of Physicians and Surgeons under RCW 18.71.055, and (2) issuing M.D. licenses to three osteopathic physicians and surgeons.

A statement of the following background material appearing in the record is essential to an understanding of the basic controversy involved in this case.

In June, 1961, the American Medical Association House of Delegates adopted a policy from which the following is a partial quote:

> It is appropriate for the American Medical Association to reappraise its application of policy regarding relationships with doctors of osteopathy, in view of the transition of osteopathy into osteopathic medicine; in view of the fact that the colleges of osteopathy have modeled their curricula after medical schools; in view of the almost complete lack of osteopathic literature and the reliance of osteopaths on, and the use of, medical literature; and, in

view of the fact that many doctors of osteopathy are no longer practicing osteopathy.

Policy should now be applied individually at state level according to the facts as they exist.

Thereafter, a "merger" program was instituted in California, whereby some 2,200 of the state's 2,400 licensed osteopaths were granted M.D. degrees and joined the medical profession. In September, 1961, the Washington State Medical Association House of Delegates unanimously endorsed the American Medical Association Statement of Principle quoted above, and appointed a committee to study implementation. When the committee reported, it proposed the creation of a college in this state which could grant M.D. degrees to osteopaths.

This plan was unanimously approved by the Washington State Medical Association House of Delegates in September, 1962. As a result, the Washington College of Physicians and Surgeons was chartered in December, 1963. The Board of Regents of the College consists of five prominent physicians and an attorney. About 75 practicing physicians and surgeons from the Seattle area were appointed to the faculty. Some of these held "clinical" appointments with the University of Washington School of Medicine; however, there was no connection between the College and the University of Washington School of Medicine. The College was not approved by any of the national bodies which accredit medical schools.

The College sought applications from licensed osteopaths only. The admissions committee screened 64 applicants and accepted 58 for a course, consisting of only 4 to 5 hours of lectures a day for 12 days over a 12-week period, commencing March 7, 1964. The total number of hours of instruction was between 48 and 60. The College had no facilities of its own, so the lectures and demonstrations were held at four cooperating Seattle hospitals. The address of the College was that of a Seattle law office. Fifty-four enrollees completed the course. All passed the final examinations and were awarded M.D. degrees by the College.

While the course was in progress, the Washington State Board of Medical Examiners conducted a hearing on the College's petition for accreditation under RCW 18.71.055, as a medical school. The statute reads as follows:

Medical schools—Requirements for accreditation and approval. The board may accredit and approve any medical school provided that it:

(1) Requires collegiate instruction which training shall include theoretical and laboratory courses in physics, biology, inorganic and organic chemistry;

(2) Provides adequate instruction in the following subjects: Anatomy, biochemistry, microbiology and immunology, pathology, pharmacology, physiology, anaesthesiology, dermatology, gynecology, internal medicine, neurology, obstetrics, opthalmology, orthopedic surgery, otolaryngology, pediatrics, physical medicine and rehabilitation, preventive medicine and public health, psychiatry, radiology, surgery and urology;

(3) Provides clinical instruction in hospital wards and outpatient clinics under guidance.

Approval may be withdrawn by the board at any time a medical school ceases to comply with one or more of the requirements of this section.

The Board, on March 20, 1964, refused accreditation, basing that decision on the following conclusions:

(1) In view of the complexities and technical nature of the subjects mentioned by RCW 18.71.055, it would not be possible to adequately instruct students in these subjects in the above mentioned twelve sessions consisting of approximately sixty actual hours.

(2) It would not be possible to provide adequate clinical instruction in hospital wards and out patient clinics under guidance in the time permitted by the above mentioned curriculum.

(3) The Board does not interpret the legislative intent as found in RCW 18.71.050 and .055 as permitting it to accredit as a medical school a school which provides only sixty actual hours of instruction on twelve consecutive Saturdays.

The College attacked this ruling in superior court, which upheld the Board, and an appeal was taken to this court.

While the appeal was pending and following a change of personnel on the Board, the Board gave notice that it would reconsider its ruling and that interested parties were invited to submit additional written materials to aid it in making its determination. The Board considered these materials at a meeting held on July 12, 1966, and decided to request more information from the Dean of the College, Dr. E. Harold Laws. Then, on July 28, 1966, the Board voted, three to two, to accredit the College. (The College thereupon abandoned its pending appeal to this court.) At that time, the course had been concluded, degrees had been awarded, and, according to the Chancellor of the College, Dr. Dean K. Crystal, the College had ceased to operate save as a repository for records.

The two members of the Board, Dr. Leo J. Rosellini and Dr. John F. Fiorino, who opposed accreditation, filed a vigorous written dissent characterizing the College as nothing more than a "Diploma Mill," and requested the Attorney General to bring an action against the Board to set aside its ruling. This request was declined and thereafter the plaintiffs (appellants), Vernon J. Reagles, who is President of the Washington Osteopathic Medical Association, the Washington Osteopathic Medical Association, and Dorothy Brewer, a taxpayer, sought review of the Board's action in Thurston County Superior Court. These plaintiffs also attacked the Board's granting, under RCW 18.71.090 (the reciprocity statute), of M.D. licenses to three osteopaths who had received M.D. degrees from the College.

There is no need to recapitulate the entire course of the proceedings in the superior court. We mention only what is relevant to our decision here. Before entering judgment, that court quashed its ex parte order restraining the three licensees from holding themselves out as M.D.'s, finding that these persons, who were not parties to the action, had substantial property rights in their licenses. The judgment, accompanied by findings of fact and conclusions of law, dismissed the plaintiffs' action on the grounds that (1) the Board's actions were not arbitrary, capricious, or contrary

to law; (2) the plaintiffs lacked standing to sue; and (3) the court lacked jurisdiction to entertain the suit. Plaintiffs' appeal followed.

The Washington College of Physicians and Surgeons has been granted leave to file a brief amicus curiae in support of defendant Board. Attorneys for certain individuals whose M.D. licenses were issued by the Board during the brief interval between the entering of judgment and the granting of review by this court, which licenses we ordered held in abeyance pending the outcome of this appeal, filed a brief as amici curiae, representing their clients' interest.

We are concerned primarily with one essential, dispositive question: Did the State Board of Medical Examiners follow the legislative mandate when it accredited the Washington College of Physicians and Surgeons? In order to accredit a medical school, the Board must be satisfied that the school complies with RCW 18.71.055, *supra.*

Plaintiffs contend that the Board acted arbitrarily, capriciously, and without legal authority; that the College was not a "school" such as is contemplated by this section in that it offered, at most, only a brief refresher course in the listed subjects, and otherwise lacked the necessary features of a medical school; and that its primary purpose was to serve as a pretext for awarding unearned M.D. degrees to osteopaths who intended to depart their own profession for the ranks of the medical profession. We think the evidence clearly bears out these contentions.

The defendant Board maintains that, since the enrollees in the College had earned degrees from schools of osteopathy, a brief refresher course amounted to "adequate instruction" under the statute. We think that reasoning is patently fallacious. The statute does not authorize the Board to accredit medical schools on the basis of their students' credentials. In order to comply with RCW 18.71.055, *supra,* the Board must determine that the *school* is offering "adequate instruction." The legislative intent is clear. Accreditation is a recognition to be afforded medical schools which have permanent existence, adequate facili-

ties, competent staff and a sound instructional program. These requirements are implicit in the statute.

The Board retroactively accredited the College even though the College had ceased to operate. We find no provision in the statute authorizing such action. The statute employs the present tense, saying, for example, that the Board may accredit a medical school which "requires . . ." and which "provides adequate instruction." RCW 18.71.055. The inference is clear that the legislature contemplates accreditation of medical schools that are actually operating when accreditation is granted.

■ Moreover, it is obvious that the College was not meant to be a medical school, in any permissible sense of the word. The real purpose of the College was to, in effect, translate the D.O. (Doctor of Osteopathy) degree into the M.D. degree. Yet, as this court had occasion to observe in *Williamson v. Grant Cy. Pub. Hosp. Dist. No. 1,* 65 Wn.2d 245, 250, 251, 396 P.2d 879 (1964), the legislative and public policy of this state is to separate the allopathic and osteopathic professions:

It is sufficient to point out that there are salient and material differences between the statutory requirements for one to be licensed as a doctor of osteopathy and as a doctor of medicine. The former must hold a diploma from a school of osteopathy and surgery having standards not less than those prescribed by the American Osteopathic Association and the American Association of Osteopathic Colleges (RCW 18.57.020); the latter must have a diploma from an accredited medical school (RCW 18.71.050), the curriculum of which must meet the requirements of RCW 18.71.055. The statutes licensing a doctor of medicine "shall not be construed to apply in any manner to the practice of osteopathy" (RCW 18.71.030).

On the other hand, the licensing statutes for doctors of osteopathy "shall not be construed to apply in any manner to any other system or method of treating the sick or afflicted." RCW 18.57.040. Different examinations are required; examinations for osteopaths are graded according to the standards set forth in RCW 18.57.020 and RCW 18.57.080; examinations for doctors of medicine by the standards required by RCW 18.71.070. Professional con-

duct of an osteopath is controlled by the provisions of RCW 18.57.170 and RCW 18.57.180—of a doctor of medicine by RCW chapter 18.72.

There are other statutory differences, but we believe the foregoing is sufficient to illustrate that the legislature has recognized and established distinctions between the branches of the healing arts which it considers necessary for the public good. Courts will not question the legislative wisdom of these distinctions so long as there is any reasonable basis for them.

The Board may not ignore the public policy of this state or substitute its judgment for that of the legislature. The legislature has arrived at this policy in the discharge of its duty to safeguard the public health and welfare.

A New York court, in a case resembling this one, recently pointed out a basic purpose of that state's similar public policy. In *New York State Osteopathic Soc'y, Inc. v. Allen,* 51 Misc.2d 849, 273 N.Y.S.2d 968 (1966), that court said:

The public policy of this State as declared by the Legislature is to maintain a distinction between osteopaths and medical doctors who employ different concepts of the art of healing in their practice. . . . ". . . The *differing licenses serve to apprise the public of the differing training of the licensee*". [Quoted portion from *Kurk v. Medical Soc'y of County of Queens, Inc.,* 24 App. Div. 2d 897, 264 N.Y.S.2d 859 (1965).]

Were the Board's action to stand, there would be no way for the people of this state to apprise themselves of the type of training received by members of the medical profession.

We conclude that the Board, in accrediting the College, ignored the letter and intent of statute, and that the sole purpose of the accreditation was to facilitate the merging of the osteopathic profession into the allopathic profession, contrary to the public policy of this state. The Board's action was a subterfuge, was palpably arbitrary and capricious, and was void in all respects.

Plaintiffs further contend that the Board acted arbitrarily and capriciously because it reversed its own prior deci-

sion denying accreditation without legal justification. We take note of the fact that the Board entered no findings to justify granting accreditation and that the effect of its action was entirely retroactive. However, since we have already determined that the Board acted beyond its authority, we need not decide whether this contention amounts to an independent ground for so holding.

■ It is further contended that this court has no jurisdiction to review the Board's action, in view of the rule we established in *Okanogan Cy. School Dist. No. 400 v. Andrews,* 58 Wn.2d 371, 363 P.2d 129 (1961). This holding must be evaluated together with our decision in *State ex rel. Cosmopolis Consol. School Dist. No. 99 v. Bruno,* 59 Wn.2d 366, 367 P.2d 995 (1962), where we accepted jurisdiction to review a nonjudicial administrative act which was alleged to be illegal, arbitrary and capricious, even though there was no statutory provision affording review. We approved *Cosmopolis* when we held, in *State ex rel. Shannon v. Sponburgh,* 66 Wn.2d 135, 401 P.2d 635 (1965), that the legislature may not abridge the courts' constitutional power to review administrative acts. The issues of alleged arbitrary and capricious conduct raised in this case clearly bring it within the class of cases where this court will take jurisdiction.

■ Defendant Board next contends that the plaintiffs have no standing to bring this cause. It is argued that the plaintiffs are not persons "beneficially interested" in the subject matter of this action. We will discuss this contention first as it applies to plaintiff Reagles and plaintiff Washington Osteopathic Medical Association. These plaintiffs predicate their right to sue on the vital interest they have in all matters affecting the osteopathic profession, and also on their interest, founded on their professional responsibility to the public, in the standards of medical education and practice in this state. They also contend that the osteopathic profession will suffer, particularly osteopathic specialists and osteopathic hospitals, because the Board's action will encourage some osteopathic general practitioners to

desert their profession for the medical profession. This would reduce referrals to osteopathic specialists and the use of osteopathic hospitals. This record and our judicial notice of medical professional practices support this contention. We are satisfied that these plaintiffs are interested in, and affected by, the Board's action to an extent sufficient to give them standing to sue in this case.

Plaintiff Brewer admits that she has no special or pecuniary interest but claims that we should recognize her standing because of *Reiter v. Wallgren,* 28 Wn.2d 872, 184 P.2d 571 (1947), where we formulated the rule that, in a proper case, a taxpayer may sue to protect the public interest, when a demand has been duly made upon the Attorney General and refused. We do not find it necessary to pass upon this question, however, since we have concluded that the other plaintiffs do have standing to maintain this action.

■ It is contended that the filing of plaintiffs' original petition in superior court was not timely, on the ground that writs of certiorari must be sought within the time ordinarily allowed for filing an appeal. This contention is without merit. As we explained in *Pierce v. King Cy.,* 62 Wn.2d 324, 333, 382 P.2d 628 (1963), the rule relied upon here applies only "to cases arising in the courts, or in other judicial proceedings, where the direct notice of the pendency thereof to the parties involved is jurisdictional."

■ The plaintiffs have attacked the Board's action in granting M.D. licenses to Drs. E. J. Hamburger, H. C. Moore, and P. R. Sargent under the reciprocity provisions in RCW 18.71. We agree with the trial court that this matter is not now properly presented for decision, in view of the fact that these three individuals are not parties to this action. Licensees may not be deprived of their property rights unless they have been afforded the essentials of due process. *Northern Cedar Co. v. French,* 131 Wash. 394, 230 Pac. 837 (1924).

We hold that the order of the Washington State Board of Medical Examiners, granting accreditation to the Washing-

ton College of Physicians and Surgeons, is void and a nullity.

The judgment of the trial court is reversed, except insofar as it dismisses the plaintiffs' petition for review of the Board's order issuing M.D. licenses to Drs. Hamburger, Moore, and Sargent, which part of the judgment we affirm solely on the ground of the court's lack of jurisdiction of these individuals, without prejudice to an attack on this order in an appropriate proceeding.

FINLEY, C. J., HILL, DONWORTH, WEAVER, HAMILTON, HALE, and NEILL, JJ., and OTT, J. Pro Tem., concur.

