[No. 4322–II.   Division Two.   April 13, 1981.]

JOHN E. HOUGH, ET AL, *Appellants,* v. WASHINGTON STATE PERSONNEL BOARD, ET AL, *Respondents.*

*Edward E. Younglove III,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Richard A. Heath* and *Spencer Daniels, Assistants,* for respondents.

PETRIE, J.—Plaintiffs appeal an order dismissing their petition for a writ of common law certiorari and their declaratory judgment action. We affirm.

The facts of this case are undisputed. The 13 plaintiffs comprise two groups of employees of the Department of Transportation: 6 external auditors and 7 photogram-metrists. In July 1976 the external auditors, supported by the Department of Transportation, requested the Personnel Board to change their "indexing."[1] They contended that although the duties and responsibilities of their job were similar to those of state examiners in the State Auditor's Office, the state examiners received a substantially larger

---

[1] Indexing is a relatively new term in salary survey methodology. It had its genesis in a study carried out in late 1975 and early 1976, commonly referred to as the Arthur Young Study. Pursuant to an appropriation by the legislature, Laws of 1975, ch. 9, § 17, Arthur Young & Company conducted a salary survey in October 1975. From the approximately 2,100 classes in the state classification plan, Arthur Young chose 99 representative classes to use as survey "benchmarks." A prevailing rate of pay for each of the 99 benchmark classes was determined from the survey data collected from in–state employers and 10 state governments. The study did not gather data on the remaining 2,000 classes; instead they were related to the benchmark classes using a system developed by the Department of Personnel. This process of choosing the benchmark to which to tie a nonbench-mark class for the purpose of assigning salary rates for salary survey purposes is called indexing.

salary,[2] due to the different indexing codes for these two positions. In January 1977, the Personnel Board approved the external auditors' request but delayed implementing the readjustment until the 1978 salary survey.[3] The Board made a similar decision regarding the photogrammetrists in April 1977.

Following the decision the external auditors, unhappy that the readjustment was not made effective immediately, discussed possible causes of action with their union, the Washington Public Employees Association, and private attorneys. The external auditors wrote to the Governor, seeking her assistance. Disappointed with the response of their union, the external auditors joined another union, the Washington Federation of State Employees, AFL–CIO, (WFSE), in the summer of 1977. The WFSE's attorneys requested the Personnel Board to reconsider its earlier decision not to implement the readjustment immediately. In March 1978 the Board confirmed its earlier decision.

In April 1978, 15 months after the Board's initial decision, the external auditors brought this action in superior court, alleging four bases of jurisdiction: (1) statutory appeal under the civil service statute (RCW 41.06.200); (2) statutory writ of certiorari (RCW 7.16.030–.140); (3) common law writ of certiorari under the court's inherent right to review pursuant to article 4, section 6 of the Constitution of the State of Washington; and (4) declaratory judgment pursuant to RCW 7.24. The photogrammetrists intervened in August of 1978, 16 months after the Board's decision regarding their request.

The Superior Court dismissed the action, holding that none of the grounds of jurisdiction was available. The court held (1) that the Board's decision was not one of those enumerated by RCW 41.06.200 and thus no statutory

---

[2]The record does not show what the difference between the two salary levels was.

[3]Salary surveys, upon which salaries of state employees are based, are conducted once every 2 years. RCW 41.06.160.

appeal lay; and (2) that the decision was not a "judicial function" and thus no statutory writ of certiorari would issue.[4] The court further held that a common law writ of certiorari must be sought within 30 days, thus precluding the court's power to review. Consequently, the court did not decide if the case involved a "fundamental right," a jurisdictional prerequisite to invoking the court's inherent right to review. Also, the court held that the declaratory judgment action was barred by laches.

■ On appeal, the external auditors and photogrammetrists contend the trial court erred in applying a 30-day limitation to common law writs of certiorari and in dismissing their declaratory judgment action on the ground of laches. We agree with the trial court's resolution of these issues and thus affirm, but base our decision on different grounds. *See Stevens v. Stevens,* 10 Wn. App. 493, 519 P.2d 269 (1974).

Under article 4, section 6 of the Washington State Constitution superior courts possess constitutional and inherent power to review allegedly illegal or manifestly arbitrary and capricious nonjudicial administrative action violative of a "fundamental right." *State ex rel. DuPont–Fort Lewis School Dist. 7 v. Bruno,* 62 Wn.2d 790, 384 P.2d 608 (1963); *State ex rel. Cosmopolis Consol. School Dist. 99 v. Bruno,* 59 Wn.2d 366, 367 P.2d 995 (1962). *See Administrative Law—Licensing by Municipal Bodies: A Judicial Function,* 53 Wash. L. Rev. 597, 602–04 (1978). Analogizing to *Vance v. Seattle,* 18 Wn. App. 418, 569 P.2d 1194 (1977), the trial court held that a petition for a common law writ of certiorari must be brought within 30 days of the agency's decision. Since the petitioners in this case waited 15 months, the court decided they were precluded from seeking such a writ.

---

[4]The court also concluded that even if either a statutory appeal or writ were available, the time limits for appealing had not been met. *See Vance v. Seattle,* 18 Wn. App. 418, 569 P.2d 1194 (1977). Appellants do not dispute these holdings on appeal.

■ In *Vance* we held only that "the time within which [statutory[5]] certiorari must be applied for is determined by reference to the time prescribed by statute or court rule for bringing an appeal." *Vance v. Seattle, supra* at 423. The rule cited in *Vance,* however, is limited to "cases arising in the courts, or in other judicial proceedings, where the direct notice of the pendency thereof to the parties involved is jurisdictional." *Pierce v. King County,* 62 Wn.2d 324, 333, 382 P.2d 628 (1963). In *Reagles v. Simpson,* 72 Wn.2d 577, 434 P.2d 559 (1967), the Supreme Court reiterated the limitation on the timeliness rule, quoting the language above from *Pierce,* and thus refused to apply a statutory time limit for seeking a common law writ of certiorari. Because we believe *Reagles* is controlling, we hold that a 30–day *limitation is inapplicable to petitions for a common law writ of certiorari.*[6] *See Veradale Valley Citizens' Planning Comm. v. Board of County Comm'rs,* 22 Wn. App. 229, 588 P.2d 750 (1978).

■ We believe, however, that the petitioners have failed to establish a "fundamental right" and thus no jurisdiction under article 4, section 6 exists. Recently we stated that

> the fundamental right limitation boils down to a rule which says that a complainant with standing has a fundamental right to have the agency abide by the constitution, statutes, and regulations which affect the agency's exercise of discretion.

*Wilson v. Nord,* 23 Wn. App. 366, 373, 597 P.2d 914 (1979). Thus, the touchstone of the fundamental right limitation is

---

[5]*See Vance v. Seattle, supra* at 421 n.2, 423 n.3.

[6]We recognize, as the Personnel Board points out, that our holding leads to an anomalous result. A terminated employee must appeal a Board decision within 30 days. RCW 41.06.200. Under our ruling, however, an employee merely appealing a salary dispute is not bound by the same limitation. This result is mitigated by the fact that an employee seeking a common law writ of certiorari has a difficult hurdle to overcome in invoking jurisdiction at all. *See Wilson v. Nord,* 23 Wn. App. 366, 597 P.2d 914 (1979). Further, any unreasonable delay in seeking the common law writ may be barred by laches. *See Leschi Improvement Council v. State Highway Comm'n,* 84 Wn.2d 271, 525 P.2d 774 (1974).

whether the agency in exercising its discretion violated the constitution, any applicable statutes, or its own regulations. *See also Leonard v. Civil Serv. Comm'n*, 25 Wn. App. 699, 611 P.2d 1290 (1980).

Petitioners contend that the provisions within the civil service statute and the Personnel Board's regulations providing for "equal pay for equal work" have been violated. RCW 41.06.010, .150(14)–(16), .160; WAC 356–14–010. Petitioners, however, have cited no provision that requires the Personnel Board to implement immediately a salary increase because the Board determines that a class of employees will be indexed differently in the next salary survey. Absent such a provision the court lacks jurisdiction to review the Board's decision. *Tacoma v. Civil Serv. Bd.*, 10 Wn. App. 249, 518 P.2d 249 (1973). As the Supreme Court explained in *State ex rel. Lukens v. Spokane School Dist. 81*, 147 Wash. 467, 474, 266 P. 189 (1928):

> In a nut shell, this whole controversy arises over a question of judgment. The petitioners before the board, . . . are not in agreement with the members of the board. That disagreement of itself is not for the courts. The law has plainly vested the board of directors of school districts such as this with discretionary powers in such matters, and the directors having examined into and passed upon the matter in the exercise of their discretion, the courts have no right or power to review the conclusions reached by them as a board in the absence of a showing of abuse of discretion on their part, . . .

This language is as applicable today as it was more than 50 years ago.

■ Finally, the trial court dismissed the declaratory judgment action on the basis of laches. At approximately the same time as the trial court made its decision, we held that a declaratory judgment action may not be used to frustrate the policy of limited judicial review of nonjudicial administrative actions. *Washington Fed'n of State Employees v. State Personnel Bd.*, 23 Wn. App. 142, 594 P.2d 1375 (1979). Our holding in that case dictates a similar result in this case. Consequently, we need not address the

issue of laches.

The judgment is affirmed.

REED, C.J., and PETRICH, J., concur.