[No. 67533-3.  En Banc.]
Argued September 16, 1999.    Decided February 3, 2000.
CLARK COUNTY PUBLIC UTILITY DISTRICT NO. 1, *Petitioner*,
v. JANE R. WILKINSON, *Defendant*, INTERNATIONAL
BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 125,
*Respondent*.

*Davis Wright Tremaine*, by *Henry E. Farber* and *Jeffrey Bennett Youmans*, for petitioner.

*Hafer, Price, Rinehart & Robblee*, by *Richard Howard Robblee* and *Anne Elizabeth Senter* (*Bennett, Hartmann & Reynolds*, by *John S. Bishop*, of counsel), for respondent.

TALMADGE, J. — We must decide in this case the appropriate time limit for filing petitions for constitutional writs of certiorari seeking review of public employment arbitration awards. In this case, even though the public utility district (PUD) filed its petition for review in superior court some six months after the arbitrator's original award and nearly four months after the arbitrator modified a portion of the award, the trial court held the PUD was still entitled to judicial review of the award by constitutional writ of certiorari. By contrast, the Court of Appeals applied by analogy the three-month period for vacating arbitration awards, established in the arbitration act, RCW 7.04.180, to the PUD's petition and found it untimely. We reverse the Court of Appeals, but remand the case to the trial court for a determination of whether the petition was filed within a reasonable time.

## ISSUES

(1)   Did the Court of Appeals err when it applied by

analogy a 90-day statutory time limit to the PUD's petition for a constitutional writ of certiorari?

(2) Did the arbitrator exceed her authority when she ordered the PUD to place laid-off union employees in positions outside of the collective bargaining unit?

(3) Did the PUD waive its claim that the arbitrator exceeded her authority by failing to present the issue to the arbitrator?

## FACTS

Clark County Public Utility District No. 1 is a municipal corporation providing public utilities, including electrical power, to Clark County residents. The International Brotherhood of Electrical Workers, Local 125 (Union) is a labor organization representing certain employees of the PUD. The PUD and the Union are parties to a collective bargaining agreement (CBA) governing the terms and conditions of employment of the represented employees.

On March 21, 1996, the PUD laid off 10 employees covered by the CBA. Pursuant to the CBA, the Union submitted a grievance to the PUD on behalf of the laid-off employees, contending the CBA specifically incorporated provisions of the PUD Personnel Policy Manual, which allegedly mandated placement of laid-off PUD workers in any available position within the PUD staff, even outside the Union's bargaining unit. The parties were unable to resolve the grievance between themselves, so they submitted the matter to arbitration pursuant to the procedures established in the CBA.[1]

The mutually selected arbitrator held a hearing on September 18, 1996, and issued her opinion and award on December 11, 1996. The award required the PUD to place 3 of the 10 grievants into non-CBA positions and to pay

---

[1]Article V of the CBA provides for arbitration of grievances and Section 5.8 specifically states: "The decision of the Arbitrator shall be final, conclusive and binding upon [Clark County PUD], the Union, and the employees involved." The CBA did not provide for judicial review of the arbitrator's decision.

those grievants back pay and benefits from the dates they should have been offered the relevant positions. The arbitrator also retained jurisdiction over the remedial aspects of her decision until March 11, 1997.

On January 20, 1997, the PUD sought reconsideration of the arbitrator's decision with respect to one of the grievants on the ground she was not qualified for the nonunit position she had been awarded at arbitration; the PUD did not seek reconsideration of the award as to the other two employees. On February 28, 1997, the arbitrator granted the PUD's motion for reconsideration and amended the award, which now required the PUD to place only two of the grievants into non-CBA positions.

The Union wrote to the PUD on March 27, 1997, demanding compliance with the arbitrator's award. Allegedly, the PUD neither responded to the letter nor acted in compliance with the award.

Thereafter, on June 11, 1997, the PUD filed a Verified Petition for Constitutional Writ of Certiorari and for Review of the Arbitrator's Decision in Clark County Superior Court. The PUD asked the court to review and vacate the arbitrator's award because it was arbitrary and capricious, and in excess of her authority under the CBA. Specifically, the PUD contended the arbitrator had no authority under the CBA to place Union members in positions outside the bargaining unit. The Union filed an answer and counterclaimed for enforcement of the award, arguing the PUD's petition was untimely[2] and the PUD waived the issue of the arbitrator's authority by failing to expressly assert it to the arbitrator. The trial court ruled in favor of the PUD and granted the writ of certiorari, vacating the arbitration award and denying the Union's counterclaim for enforcement. The trial court expressly ruled the arbitrator acted beyond her authority and the PUD had

---

[2]The Union contended the petition was untimely, based on the application by analogy of statutory time limits. By contrast, the PUD asserted the equitable doctrine of laches governs the limitation period for filing constitutional writs of certiorari.

not waived the issue. It also held the PUD's petition was timely, although the basis for the timeliness decision is not readily apparent, as the trial court's written order is silent on the issue of timeliness. The only reference to timeliness in the trial court's oral decision is this summary reference:

> Let me indicate to you, Counsel, that I've looked at it, I've thought about it. I feel that your position is correct, Mr. Farber [the PUD's attorney]. . . . I'm not too concerned about the manual as you're not and I will go along with your argument on timeliness. I've got to or I would have to rule in favor of Mr. Bishop [the Union's attorney]. So I will grant your motion, Counsel.

Report of Proceedings at 18.

The Union appealed the trial court's decision to the Court of Appeals, Division Two, which reversed the trial court order because the PUD's petition was untimely. The Court of Appeals determined the trial court should have applied by analogy the three-month period for vacating arbitration awards, established by RCW 7.04.180, to the PUD's application for a constitutional writ of certiorari. *Clark County Pub. Util. Dist. No. 1 v. Wilkinson*, 93 Wn. App. 350, 967 P.2d 1270 (1998). In determining the PUD's petition was untimely, the court did not reach the merits of the arbitrator authority or waiver issues. The PUD petitioned us for review, which we granted.

## ANALYSIS

Washington law on the applicable time limits governing writs of certiorari, both statutory and constitutional, has not always been a picture of clarity. We believe the nature of the writ sought by the petitioner governs the applicable limitation period.

Washington law clearly indicates a distinction between statutory and constitutional writs of certiorari. In general, certiorari is available to provide for judicial review where there is a "statutory and contractual hiatus" that provides no clearly articulated mechanism for obtaining judicial

review of a decision. *Grays Harbor County v. Williamson*, 96 Wn.2d 147, 150-53, 634 P.2d 296 (1981).

A court will issue a statutory writ of review, pursuant to chapter 7.16 RCW, if the petitioner can show that (1) an inferior tribunal or officer (2) exercising judicial functions (3) exceeded its jurisdiction or acted illegally, and (4) there is no other avenue of review or adequate remedy at law. *See* RCW 7.16.040; *Bridle Trails Community Club v. City of Bellevue*, 45 Wn. App. 248, 253, 724 P.2d 1110 (1986). If any of the factors is absent, then there is no basis for superior court review. *See Bridle Trails*, 45 Wn. App. at 252; *see also Raynes v. City of Leavenworth*, 118 Wn.2d 237, 821 P.2d 1204 (1992) (statutory writ granted only when all four factors are present). But if these factors are shown, review is mandatory. *See* RCW 7.16.040;[3] *see also Erection Co. v. Department of Labor & Indus.*, 121 Wn.2d 513, 518, 852 P.2d 288 (1993) (noting the word "shall" in a statute is presumptively imperative and operates to create a duty unless a contrary legislative intent is apparent).

By contrast, the constitutional writ of certiorari embodied in article IV, section 6 (amendment 87) of the Washington Constitution[4] is available in somewhat narrower circumstances. *See Bridle Trails*, 45 Wn. App. at 253; *see also Saldin Sec., Inc. v. Snohomish County*, 134 Wn.2d 288, 294-95, 949 P.2d 370 (1998) (a court may grant a constitutional writ if no other avenue of appeal, such as a statutory writ, is available). Under article IV, section 6 (amendment 87), a superior court possesses the power to review arbitrary decisions by issuing constitutional writs of certiorari. *See Saldin*, 134 Wn.2d at 292. The purpose of such a writ is "to enable a court of review to determine whether the proceed-

[3]RCW 7.16.040 states: "A writ of review *shall* be granted by any court . . . when an inferior tribunal . . . has exceeded the jurisdiction of such tribunal . . . and there is no appeal, nor . . . any plain, speedy and adequate remedy at law." (Emphasis added.)

[4]Article IV, section 6 (amendment 87) provides: "Said courts and their judges shall have power to issue writs of mandamus, quo warranto, review, certiorari, prohibition, and writs of habeas corpus, on petition by or on behalf of any person in actual custody in their respective counties."

ings below were within the lower tribunal's jurisdiction and authority." *Id.* (citing *Bridle Trails*, 45 Wn. App. at 252-53). Thus, a court will accept review only if the petitioner can allege facts that, if verified, establish the lower tribunal's decision was arbitrary and capricious or illegal. *See Saldin*, 134 Wn.2d at 294; *Pierce v. King County*, 62 Wn.2d 324, 333, 382 P.2d 628 (1963). But this form of review lies entirely within the trial court's discretion. *Bridle Trails*, 45 Wn. App. at 252.[5] The Legislature may not intrude by statute on this constitutional power. *See North Bend Stage Line, Inc. v. Department of Pub. Works*, 170 Wash. 217, 228, 16 P.2d 206 (1932); *State ex rel. Cosmopolis Consol. Sch. Dist. No. 99 v. Bruno*, 59 Wn.2d 366, 369, 367 P.2d 995 (1962).[6]

In the present case, review by certiorari is appropriate initially because there is no statutory mechanism for judicial review of public employment labor arbitrations. Although RCW 41.56.122(2) provides for binding arbitration in public employee labor disputes, it does not provide for judicial review of such decisions. In addition, chapter 49.08 RCW, which governs general labor disputes, does not apply to public employment arbitrations. RCW 41.56.125. Furthermore, RCW 7.04.010, Washington's general arbitration statute, does not apply to agreements between employers and employees unless specifically provided in the labor agreement. *See Grays Harbor County*, 96 Wn.2d at 152. The CBA here did not incorporate chapter 7.04 RCW by reference.

The parties appear to agree a constitutional writ of certiorari is the mechanism for review available to the PUD.

---

[5]Although a court may refuse to grant a writ, it may do so only if based on tenable reasons. *See Bridal Trails*, 45 Wn. App. at 252 (citing 1 JOHN BOUVIER, BOUVIER'S LAW DICTIONARY AND CONCISE ENCYCLOPEDIA 443, 446-47 (Francis Rawle ed., 3d rev. ed. 1914)).

[6]This is not to say, however, that the Legislature may not expressly provide a statutory mechanism for judicial review. For example, land use decisions in Washington were historically the subject of review by writs of certiorari. The Legislature enacted the Land Use Petition Act, RCW 36.70C.010, in 1995, to provide a clear statutory mechanism for judicial review of land use decisions.

Neither party has argued a statutory writ under chapter 7.16 RCW is available to the PUD.[7]

While the parties appear to agree an arbitrator's award may be subject to meaningful judicial review by a constitutional writ of certiorari, they disagree as to the time period within which a party may petition for such writ. Our case law has not been crystal clear on this issue.

We have previously held that a petition for a writ of certiorari must be filed within a "reasonable time." *Akada v. Park 12-01 Corp.*, 103 Wn.2d 717, 718, 695 P.2d 994 (1985); *see also Hough v. State Personnel Bd.*, 28 Wn. App. 884, 626 P.2d 1017 (1981) (determining the court lacked jurisdiction, it did not reach the issue of what constituted a reasonable time).

A reasonable time within which to apply for a statutory writ is the analogous statutory or rule time period because chapter 7.16 RCW does not prescribe a limitation period. As the Court of Appeals stated: "the time within which [statutory] certiorari must be applied for is determined by reference to the time prescribed by statute or court rule for bringing an appeal." *Vance v. City of Seattle*, 18 Wn. App. 418, 423, 569 P.2d 1194 (1977). This rule applies *only* to the statutory writ. As we explained in *Pierce*, "this rule [that writs of certiorari must be sought within the time allowed for filing an appeal] is limited to cases arising in the courts, or in other judicial proceedings[.]" *Pierce*, 62 Wn.2d at 333; *Reagles v. Simpson*, 72 Wn.2d 577, 586, 434 P.2d 559 (1967).

By contrast, we have held constitutional writs of certio-

---

[7]A statutory writ is not available to the PUD if arbitration is a nonjudicial function. *See Grays Harbor County*, 96 Wn.2d at 152-53 (suggesting but not deciding that arbitration is not generally a judicial function). Arbitration has been deemed a substitute for judicial action. *See Department of Agriculture v. State Personnel Bd.*, 65 Wn. App. 508, 828 P.2d 1145, *review denied*, 120 Wn.2d 1003, 838 P.2d 1143 (1992). Arguably, the purpose of arbitration is to submit disputes to a process that is less formal, speedier, and generally less vexatious than litigation. *Cf. Grays Harbor County*, 96 Wn.2d at 156 (Dore, J., dissenting) (determining an arbitrator performed a judicial function where the arbitrator applied the law to the facts, and where the action of the arbitrator in conducting the hearing and admitting exhibits resembled the ordinary business of the courts). We do not specifically reach this issue. In light of the parties' agreement, the statutory writ is unavailable to the PUD.

rari need not be sought within the analogous time ordinarily allowed by statute or rule for filing an appeal. For example, in *Saldin,* we held a statute limiting when judicial review of a State Environmental Policy Act of 1971, chapter 43.21C RCW, determination could be sought did not apply analogously to a constitutional writ of certiorari. *Saldin,* 134 Wn.2d at 294-96. *See also Hough,* 28 Wn. App. at 888 ("a 30-day [statutory] limitation is inapplicable to petitions for a common law writ of certiorari.").[8]

■ However, the time for filing a constitutional writ is not limitless. To the contrary, any unreasonable delay in seeking a constitutional writ bars issuance of the writ.[9] Laches principles appropriately indicate the reasonable time for seeking a constitutional writ. *See Leschi Improvement Council v. State Highway Comm'n,* 84 Wn.2d 271, 275, 525 P.2d 774, 804 P.2d 1 (1974). Laches, an equitable doctrine, protects the parties from prejudicial delay in seeking the writ while preserving a court's discretion to grant or deny the writ. *See Vance,* 18 Wn. App. at 421 n.2 (application for writ of certiorari "calls for the exercise of judicial discretion and consideration of equitable principles."). Application of the doctrine is on a case-by-case basis. *See Leschi,* 84 Wn.2d at 275.

Laches consists of two elements: (1) inexcusable delay and (2) prejudice to the other party from such delay. *See Brown v. Continental Can Co.,* 765 F.2d 810, 814 (9th Cir. 1985). In determining whether the delay was inexcusable, a

---

[8]Only the case of *Deschenes v. King County,* 83 Wn.2d 714, 716, 521 P.2d 1181 (1974), appears to be contrary. In *Deschenes,* this court stated: "[a]lthough the proceeding herein is denominated a writ of certiorari, it is also referred to in the same section of the code as an 'appeal' and a definite time limit is provided. Compliance with such time limit is essential[.]" The holding in *Deschenes* was effectively overruled in *Saldin.* To the extent that was done implicitly in *Saldin,* we do so explicitly here.

[9]Laches is an affirmative defense, which is waived if not appropriately pleaded by the defendant. CR 8(c). The PUD here argues the Union did not plead laches in its answer. The Union did plead and argue the timeliness of the PUD's petition. This is all it was required to do. In fact, the defense of laches is not raised in response to a constitutional writ of certiorari. It merely supplies an analytical framework for deciding if the writ was timely, that is, whether it was sought within a reasonable time.

court may look to a variety of factors including similar statutory and rule limitation periods. But the main component of the doctrine is not so much the period of delay in bringing the action, but the resulting prejudice and damage to others. *See Pierce*, 62 Wn.2d at 332; *see also Vance*, 18 Wn. App. at 425 (noting that laches is an equitable doctrine and its application does not depend solely upon the passage of time alone, but also upon the effects of delay upon the relative positions of the parties) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 66 S. Ct. 582, 90 L. Ed. 743, 162 A.L.R. 719 (1946)). A court will not presume prejudice merely from the fact of a delay. *Vance*, 18 Wn. App. at 425. The burden is on the defendant to show whether and to what extent he or she has been prejudiced by the delay. *Id.*

In this case, unfortunately, the record on review indicates the parties discussed the timeliness of the petition with the trial court, but it does not adequately reflect whether the trial court properly considered laches principles in analyzing if the petition for a constitutional writ of certiorari was filed within a reasonable time. As the trial court's record on the timeliness of the petition is inadequate in this specific regard, we remand this case to the trial court for a decision consistent with our view on the timeliness of constitutional writs of certiorari.[10]

## CONCLUSION

The Court of Appeals erred when it applied by analogy the 90-day statutory time limit to the PUD's petition for a constitutional writ of certiorari. Such a statutory time limit

---

[10]In light of our disposition of this case, we do not reach the issues of the arbitrator's authority or the waiver of that issue. Pursuant to RAP 13.7(b), "[i]f the Supreme Court reverses a decision of the Court of Appeals that did not consider all of the issues raised which might support that decision, the Supreme Court will either consider and decide those issues or remand the case to the Court of Appeals to decide those issues." If the trial court grants the PUD's request for a constitutional writ and an appeal follows, then the Court of Appeals may properly hear argument, if any, regarding the arbitrator's authority, and the waiver issues.

is inapplicable to constitutional writs. Notwithstanding the conflicting and often confusing results found in reported decisions on this issue, the proper time period within which to apply for a constitutional writ is a reasonable time period determined by principles of laches. We reverse the Court of Appeals and remand the case to the trial court for proceedings consistent with this opinion.

GUY, C.J., SMITH, JOHNSON, MADSEN, ALEXANDER, and SANDERS, JJ., and MUNSON, J. PRO TEM., concur.

IRELAND, J. (dissenting) — Few would disagree that working men and women deserve a timely and certain resolution of employment disputes so that they as breadwinners can put food on the tables of their families without interruption. The majority, by use of the archaic doctrine of laches, permits the employer to dawdle in pursuing its appeal rights, while the employees are left to guess when their action might be concluded.

The only issue decided in this case is: what is the appropriate time limit for filing a petition for a constitutional writ of certiorari seeking review of a public employment arbitration award? The majority reversed the Court of Appeals and remanded to the trial court for a determination of whether the petition was filed within a reasonable time under the doctrine of laches. I agree with the Court of Appeals[11] that the employer's time limit for filing its appeal by constitutional writ of certiorari should have been 90 days, which is the analogous statutory time limit set in RCW 7.04.180 for vacating an arbitration award. I therefore dissent.

The facts pertinent to the issue are simple and straightforward. Clark County Public Utility District No.1 (PUD) entered into arbitration with the International Brotherhood of Electrical Workers, Local 125 (Union). The PUD waited six months from the arbitrator's original award

---

[11]*Clark County Pub. Util. Dist. No. 1 v. Wilkinson*, 93 Wn. App. 350, 967 P.2d 1270 (1998).

(entered December 11, 1996) and nearly four months from the order on reconsideration (entered March 11, 1997) to file a constitutional writ of certiorari on June 11, 1997.

The union filed a counterclaim, arguing the PUD's petition was untimely and seeking enforcement of the arbitration award. The PUD asserted the equitable doctrine of laches.

Chapter 7.04 RCW specifically sets forth the rules of arbitration, including a 90-day limitation period to seek to vacate an arbitration award. RCW 7.04.180. However, as noted by the majority, arbitration agreements between employers and employees or their employee associations are specifically excluded, under the circumstances here, from application of the arbitration statute. Majority at 846.

A statutory writ of certiorari is available in some circumstances pursuant to chapter 7.16 RCW. *See* Majority at 845. However, no one argues that a statutory writ is applicable under the facts here. The majority holds that, because a constitutional writ of certiorari (rather than a statutory writ) is properly utilized in this case, resort to laches is appropriate rather than utilizing the analogous statutory time limit for vacation of an arbitration award.

The legal vehicle used here, a constitutional writ filed under the authority of article IV, section 6 (amendment 87) is properly allowed where there would be no other judicial review to the authority of the lower tribunal absent the writ. Interestingly, the author of the majority has previously pointed out that "[t]here is no constitutional right to a writ of certiorari; issuance of the writ has always been discretionary." *Saldin Sec., Inc. v. Snohomish County*, 134 Wn.2d 288, 305 n.12, 949 P.2d 370 (1998) (Talmadge, J., concurring).

The majority, acknowledging the constitutional writ as the appropriate *method* of review, goes on to proclaim that, because the *form* of review lies entirely within the trial court's discretion, reference to laches should be applied to determine the time limit for such a writ. What is lacking is any persuasive reason that the latter should follow from

the former. The majority concedes that the time limitation for a statutory writ, which also does not contain an explicit time limit, makes reference to the time prescribed by analogous statute or court rule for bringing an appeal. Majority at 847 (citing *Vance v. City of Seattle*, 18 Wn. App. 418, 423, 569 P.2d 1194 (1977)).

The majority cites *Saldin* and *Hough v. State Personnel Bd.*, 28 Wn. App. 884, 626 P.2d 1017 (1981) to avoid the application of the analogous time period allowed by the arbitration statute. In *Saldin* the County argued that the developers could not seek interlocutory review through a constitutional writ because there had no been final action on the plat application. *Saldin*, 134 Wn.2d at 294-97. Thus, *Saldin* has no real significance to this case, because it concerns ripeness rather than any statute of limitations. Nowhere does the *Saldin* decision reference the doctrine of laches.

The *Hough* court determined that the 30-day time limit applicable to the statutory writ of certiorari does not apply to a petition for a common law writ of certiorari from a decision of the Personnel Board, an administrative body. *Hough*, 28 Wn. App. at 888; *see also Reagles v. Simpson*, 72 Wn.2d 577, 586, 434 P.2d 559 (1967) (appeal from action of administrative body, the Washington State Board of Medical Examiners); *Pierce v. King County*, 62 Wn.2d 324, 333, 382 P.2d 628 (1963) (the rule that writs of certiorari must be sought within the time allowed for filing an appeal is limited to cases arising in the courts, or in other judicial proceedings). However, the Court of Appeals here did not apply the 30-day time limit applicable to a statutory writ which the cases cited by the majority involved. The statute the Court of Appeals found to be analogous was the arbitration statute, which allows a 90-day period to seek to vacate an arbitration award.

Under the facts of this case, arbitration is not a judicial function for purposes of invoking the *statutory writ*. However, arbitration should be considered a judicial function for purposes of *procedure*.

Arbitration has been viewed as both nonjudicial or the exercise of a judicial function depending upon the context of the question. For example, when discussing "due process" in the arena of arbitration, we have drawn upon the underlying requirement of English and American jurisprudence to declare that the parties have a fundamental right to be heard and to present evidence, after reasonable notice of the time and place of the hearing.

*Grays Harbor County v. Williamson*, 96 Wn.2d 147, 152-53, 634 P.2d 296 (1981) (citation omitted).

Because the writ here is taken from a proceeding where the parties to this dispute had notice, and were *present*, and had the opportunity to give testimony and evidence, cross-examine the opposition and promptly received the decisions of the arbitrator, the arbitration should be considered a judicial function for purposes of procedure. Unlike the zoning cases, or a determination by an administrative body where the party may not have fully participated in the underlying action, the PUD was fully apprised of all it needed to know to make a timely appeal. Laches is a doctrine of equity. Equity evolved from "the power residing in the King's grace to give exceptional relief to petitioners as occasion demanded . . . ." ROBERT WYNESS MILLAR, CIVIL PROCEDURE OF THE TRIAL COURT IN HISTORICAL PERSPECTIVE 24 (1952). No exceptional relief was called for in this case to invoke a doctrine of equity.

In writing on the need for reform in civil procedure a senior United States circuit court judge stated: "These two aims—d[i]spatch and simplicity—are of incalculable value in our judicial system, and for this reason: the pulse of modern life in every avenue beats at a fast pace and cannot be held back by obsolete forms that tend to confuse and delay it." Martin T. Manton, *Foreword* to 1 JAMES WM. MOORE & JOSEPH FRIEDMAN, MOORE'S FEDERAL PRACTICE: A TREATISE ON THE FEDERAL RULES OF CIVIL PROCEDURE, iii (1938). Certainly the intervening 62 years have only reinforced

that observation. I would affirm the Court of Appeals and remand for dismissal of the writ of certiorari.