[No. 26640-7-II.   Division Two.   May 10, 2002.]

CLARK COUNTY PUBLIC UTILITY DISTRICT NO. 1, *Respondent*, v. INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 125, *Appellant.*

*Richard H. Robblee* (of *Rinehart Robblee & Hannah*) (*John S. Bishop, of counsel*), for appellant.

*Henry E. Farber* and *Jeffrey B. Youmans* (of *Davis Wright Tremaine, L.L.P.*), for respondent.

ARMSTRONG, J. — An arbitrator ordered Clark Public Utility District No. 1 (PUD) to reinstate several laid-off union employees to nonunion positions. The arbitrator reached her decision by finding that the collective bargaining agreement incorporated the PUD's personnel manual and that the manual obligated the PUD to offer laid-off employees other positions. On review by writ of certiorari, the superior court judge vacated the arbitration award, ruling that the arbitrator had exceeded her authority by reinstating union employees to positions the collective bargaining agreement did not cover. The Union appeals. We review the arbitrator's decision and affirm the superior court's results, but do so on the grounds that the arbitrator erred in finding that the personnel manual created an enforceable promise. Because the arbitrator reached this conclusion without discussion, the decision was arbitrary and capricious.

## FACTS

The International Brotherhood of Electrical Workers, Local 125, represents some employees of the Clark County Public Utility District No. 1. *Clark Co. Pub. Util. Dist. No.*

*1 v. Wilkinson*, 139 Wn.2d 840, 842, 991 P.2d 1161 (2000).[1] After the PUD laid off 10 union employees, the Union and the PUD arbitrated the employees' rights under their collective bargaining agreement (CBA). *Wilkinson*, 139 Wn.2d at 842.

The arbitrator reasoned that the CBA "recognizes" the PUD's personnel policy manual by stating that if the manual and CBA are in conflict, the CBA controls. Clerk's Papers (CP) at 342, art. 3.6. Another part of the CBA suggests, however, that the manual's layoff benefits do not apply to union members. The arbitrator found these provisions of the CBA ambiguous. Accordingly, she adopted the Union's interpretation that the CBA incorporated the personnel manual by reference.

The personnel manual states that "the Utility will make every effort within its judgment . . . to place the employee in a comparable position." CP at 462. The arbitrator ruled, without discussion, that this language obligated the PUD to offer available positions to qualified laid-off union employees. She then found that the PUD had not offered available positions to two qualified employees and ordered the PUD to reinstate the employees with back pay.

The PUD asked the superior court to review and vacate the arbitration award by constitutional writ of certiorari. *Wilkinson*, 139 Wn.2d at 843. The superior court accepted review and found that the arbitrator had exceeded her authority. *Wilkinson*, 139 Wn.2d at 843-44.

ANALYSIS

■ The Union argues that the superior court erred when it allowed the employer to appeal the arbitration award by constitutional writ of certiorari. We disagree. Where a party alleges facts that, if true, show that the arbitrator's decision was arbitrary and capricious, the superior court may review

---

[1] We take the facts in part from the earlier Supreme Court opinion, which resolved a different issue. *Wilkinson*, 139 Wn.2d 840.

the arbitrator's decision by issuing a constitutional writ of certiorari. *Wilkinson*, 139 Wn.2d at 845-46.

The Union contends that the PUD waived its argument that the arbitrator lacked authority to reinstate union employees to nonunion positions because the PUD did not argue this to the arbitrator. The PUD disagrees, but we need not address the issue because we hold that the arbitrator's decision that the manual contained a binding promise was arbitrary and capricious.

A. CBA Interpretation

█ Under a writ of certiorari, we review an arbitration award to determine whether the arbitrator acted illegally (exceeded her authority) or in an arbitrary and capricious way. *Klickitat County v. Beck*, 104 Wn. App. 453, 460-61, 16 P.3d 692, *review denied*, 143 Wn.2d 1024 (2001). We give "exceptional deference" to the arbitrator's opinion, especially when reviewing a labor contract. *Beck*, 104 Wn. App at 460. The Ninth Circuit recently confirmed that it could overturn an arbitrator's award only if he clearly did not interpret the contract or if he " 'disregarded what the parties put before him and instead followed his own whims or biases.' " *Haw. Teamsters & Allied Workers Union, Local 996 v. United Parcel Serv.*, 241 F.3d 1177, 1183 (9th Cir. 2001) (quoting *Garvey v. Roberts*, 203 F.3d 580, 588-89 (9th Cir. 2000)).

█ An arbitrator is generally the final judge of the law and the facts. *Dep't of Soc. & Health Servs. v. State Pers. Bd.*, 61 Wn. App. 778, 785, 812 P.2d 500 (1991). But an arbitrator is subject to review if she fails to consider important evidence or divines a completely unreasonable outcome. Her decision is not arbitrary when she considers the evidence and arguments and takes a reasonable and supported position. Our review is limited to determining "*whether* the arbitrator interpreted the collective bargaining agreement, *not* whether [s]he did so correctly." *Haw. Teamsters*, 241 F.3d at 1178. That is, we ask only whether the arbitrator even " 'arguably constru[ed]' " the CBA. *Haw. Teamsters*, 241 F.3d at 1178 (quoting *E. Associated Cool*

*Corp. v. United Mine Workers, Dist. 17,* 531 U.S. 57, 62, 121 S. Ct. 462, 148 L. Ed. 2d 354 (2000))

The PUD first argues that the arbitrator misconstrued the CBA to incorporate the personnel policy manual. While the issue is certainly debatable and we might not reach the same result the arbitrator did, our limited review does not extend to the merits of this issue. The arbitrator analyzed the CBA and found its "necessary implication" was to incorporate the manual. CP at 25. Thus, she *did* consider and interpret the CBA. *See Haw. Teamsters,* 241 F.3d at 1183. " '[W]here there is room for two opinions, action is not arbitrary and capricious even though one may believe an erroneous conclusion has been reached.' " *Dep't of Agric. v. State Pers. Bd.,* 65 Wn. App. 508, 513-14, 828 P.2d 1145 (1992) (quoting *Pierce County Sheriff v. Civil Serv. Comm'n for Sheriff's Employees,* 98 Wn.2d 690, 695, 658 P.2d 648 (1983)).

B. Applying the Manual

Next, the PUD contends that the arbitrator erred in finding that the manual created a binding promise by the PUD to find other positions for the laid-off employees. We agree.

The first page of the personnel policy manual states, "THESE PERSONNEL POLICIES ARE NOT TO BE CON-STRUED AS A CONTRACT OR COVENANT OF EMPLOY-MENT." CP at 411. It "sets forth general guidelines for all employees." CP at 411. The arbitrator enforced the manual provision that if a position is eliminated, PUD will "make every effort within its judgment of serving the public efficiently to place the employee in a comparable position in compensation and responsibilities." CP at 462. The arbitrator assumed without discussing the issue that this language created an enforceable promise by the PUD to offer vacant positions to the laid-off employees. This was error; and the error rises to the level of arbitrary and capricious decision making because the arbitrator failed to give any reason for it.

■ An employer's written policies may amount to enforceable promises to the extent they promise specific treatment in specific situations. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 230, 685 P.2d 1081 (1984). But an employer will not be bound by statements in employment manuals that are conspicuously disclaimed or that are merely "general statements of company policy." *Thompson*, 102 Wn.2d at 231. To be effective, a disclaimer must convey the message that "nothing contained in the handbook, manual, or similar document is intended to be part of the employment relationship and that such statements are instead simply general statements of company policy." *Swanson v. Liquid Air Corp.*, 118 Wn.2d 512, 527, 826 P.2d 664 (1992) (citing *Thompson*, 102 Wn.2d at 230).

■ Generally, whether a statement is enforceable, was communicated to the employee, and was breached are questions of fact. *Thompson*, 102 Wn.2d at 233. But if reasonable minds cannot differ as to whether the statement is sufficient to promise specific treatment in specific circumstances, the question is one of law. *Swanson*, 118 Wn.2d at 522 (citing *Stewart v. Chevron Chem. Co.*, 111 Wn.2d 609, 762 P.2d 1143 (1988)). In *Stewart*, the employer's manual said that management "should" consider certain factors, including seniority, in making layoffs. The court held that this language did not create an enforceable obligation to consider all three factors. *Stewart*, 111 Wn.2d at 613. Moreover, the manual required the employer only to "consider" the factors; nothing in the manual specified the weight or value the employer was to give to each. Thus, the language was not specific enough to bind the employer. *Stewart*, 111 Wn.2d at 614. And a promise that is not specific is illusory. *Thompson*, 102 Wn.2d at 230.

■ Here, the manual contains a conspicuous disclaimer. And the disclaimer reminds the employees that the manual sets forth general guidelines for all employees. Moreover, the manual obligates the employer only to make *every effort* within its judgment to place employees. Thus, the employer is not required to *place* employees but only to make every

*effort* to do so. And the effort is further qualified as lying within the employer's judgment, after it considers the public interest. This language as a matter of law falls short of promising specific treatment in a specific situation. Even so, we could defer to the arbitrator's decision construing the manual if she had made one. She did not. And because the result is both legally wrong and was reached without explanation, it is arbitrary and capricious. *See Hayes v. City of Seattle*, 131 Wn.2d 706, 727, 934 P.2d 1179 (1997) (arbitrary and capricious action is action that is " 'willful and unreasoning or taken without consideration and in disregard of the facts' " (quoting *State v. Wittenbarger*, 124 Wn.2d 467, 468, 880 P.2d 517 (1994)).

Affirmed.

SEINFELD and BRIDGEWATER, JJ., concur.

Review granted at 147 Wn.2d 1020 (2002).