[No. 13905-7-II.   Division Two.   May 4, 1992.]

THE DEPARTMENT OF AGRICULTURE, *Respondent,* v. THE
STATE PERSONNEL BOARD, ET AL, *Appellants.*

*Kenneth O. Eikenberry, Attorney General,* and *Spencer W. Daniels, Assistant; Douglas P. Wyckoff* and *Swanson, Parr, Cordes, Younglove, Peeples & Wyckoff,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Joseph E. Shorin III, Assistant,* for respondent.

SEINFELD, J. — The State Personnel Board, four Department of Agriculture employees, and their union, the Washington Federation of State Employees, AFL-CIO, appeal a Thurston County Superior Court order reviewing a decision of the Personnel Board. The Board, serving as arbitrator, decided a dispute between the employees and the Agriculture Department. The court, exercising its inherent power, reviewed the Board's decision, and then issued an order declaring the decision arbitrary and capricious and remanding the matter to the Board for an answer to a specific interrogatory concerning interpretation of a merit system rule. We reverse.

The four employees worked as grain inspectors for the Department of Agriculture. The Union, the exclusive bargaining agent for the employees, had negotiated a collective bargaining agreement with the Department, effective since April 1982. Because of the nature of the work, the Department sometimes called on employees to work on nonscheduled weekends and holidays. The agreement therefore contained the following pertinent provision:

> 5.6 Call-back
> All employees in the bargaining unit are entitled to call-back credits as defined in the Merit System Rules.

The applicable portion of the merit system rules, WAC 356-15-110, states:

> (1) Management may assign employees to work on a day off or holiday. Scheduled and nonscheduled work period employees shall be notified of such assignments at least prior to the employees' normal quitting times on their second work day preceding the day off or holiday (except Sunday when it is within the assigned workshift).

(a) If management does not give such notice, affected employees shall receive a penalty payment of three hours pay at the basic salary in addition to all other compensation due them.

(b) Management may cancel work assigned on a day off or holiday. However, if management does not notify affected employees of such cancellation at least prior to their normal quitting times on their second work day preceding the day off or holiday work assignment, affected employees shall receive a penalty payment of three hours pay at the basic salary. . . .

WAC 356-15-110.

Early in 1986, the Department asked Gail Salisbury, a Department of Personnel analyst, to explain the correct application of the rule under various scenarios. The Agriculture Department explained that it had paid out "a very large amount of 'call-back' over the years" due to its need for frequent short notice scheduling. Salisbury responded that, in his opinion, the Department had been misapplying the rule. According to Salisbury, the rule allows payment of only one call-back penalty per tardy call-back notice, regardless of the number of shifts worked. In other words, if an employee were called back on Friday afternoon for several shifts over the weekend, the employee should be paid only one call-back penalty. The Department had always paid one penalty for each call-back shift an employee agreed to work.[1] Following receipt of Salisbury's memo, the Department's grain inspection program manager directed chief deputies to change the way in which call-back payments were made beginning in August 1986. After that date, employees received only one penalty payment irrespective of the number of call-back shifts worked during a given call-back period.

In October 1986, the employees filed grievances concerning the change. Article 3.3 of the agreement defined grievance as:

---

[1] For example, if an employee were notified on Friday that 6 shifts were available, 2 on Saturday, 2 on Sunday, and 2 on Monday of a 3-day weekend, and the employee agreed to work all 6 shifts, he would receive 6 call-back penalty payments of 3 hours' pay each.

a contention of misapplication, violation, or inequitable application of: State Civil Service Law, State Personnel Board Merit System Rules, Compensation Plan, Personnel Board Policies, Articles of this Agreement, Department of Agriculture policies and operating procedures, and Agriculture policies and agreements reached under Article 4 – Union Management Meetings. . . .

When neither the preliminary grievance procedure steps established by the agreement nor mediation conducted by the Department of Personnel could resolve the dispute, the employees and the Union sought arbitration before the Personnel Board.[2] The parties stipulated that there was no opinion of the Director of the Department of Personnel, order of the State Personnel Board, or official Attorney General's opinion requiring the Department of Agriculture to change the "longstanding compensation practice". The employees requested that the Board determine (1) whether the Department violated article 5.6 of the collective bargaining agreement or merit system rules when it unilaterally changed the call-back payment procedure and (2) whether the current system (that implemented in August 1986 pursuant to Salisbury's memo) violates either the agreement or the applicable rule.

At the arbitration hearing in February 1988, the employees argued that the Department is prohibited from unilaterally changing the call-back payment policy by article 5.6 of the agreement. The Department contended that it was merely complying with the merit system rules and civil service law as interpreted in Salisbury's opinion memo.

The Board, acting as an arbitration panel, issued its decision in March 1988. It states in part:

> The Board finds no evidence that Respondent [Department of Agriculture] changed its call-back payment procedure as a result of lawful order issued by a body having authority to do so. Accordingly, the Board orders the respondent to:
> 1. Continue to pay call-back penalty consistent with past practice, and

---

[2]Article 3.8 Step 4 b. of the agreement provides: "If mediation is unsuccessful, the employee may request, through the Director of Personnel, arbitration by the State Personnel Board."

2. Compensate Petitioners by providing back pay equal to the amount which was lost as a result of Respondent's change of practice as of August 11, 1986.

After the Personnel Appeals Board denied the Department's request for a declaratory ruling, the Department sought review in Thurston County Superior Court, alleging that the Board's decision was arbitrary and capricious and contrary to law. The Department's petition for review included a complaint for declaratory judgment of the rights of the parties under the agreement and the merit system rules.

The Superior Court exercised its inherent power of review and found "from the face of the petition and decision" that the arbiters' decision was arbitrary and capricious because it failed to address the issue of whether the past call-back payment practice (that practice in effect before August 11, 1986) was in conformity with the merit system rules. The Superior Court ordered remand of the case to the Personnel Board for the Board to supplement its decision with an answer to the following interrogatory:

Was the practice of the Washington State Department of Agriculture regarding call-back payments prior to August 11, 1986 in violation of MSR 356-15-110 necessitating and justifying the change in practice which occurred August 11, 1986?

The employees, the Union, and the Board sought a determination of appealability, or in the alternative, discretionary review in this court. This court determined that the Superior Court's decision was appealable, and any proceedings on remand were stayed pending the outcome of the appeal.

The parties raise various contentions on appeal. The Board argues that it is improper for the Superior Court to exercise inherent review when other methods of review are available and, further, that it is not incumbent on the Board to specify what those methods are. The employees contend that the courts should not tamper with arbitration decisions and that arbiters are not required to give reasons for their decisions. We concluded that the Superior Court properly

elected to exercise inherent review of this decision, but that it erred in finding the decision arbitrary and capricious.

The Personnel Board derives its authority from RCW 41.06.150, which provides in part:

> The [Personnel] board shall adopt rules, consistent with the purposes and provisions of this chapter, as now or hereafter amended, and with the best standards of personnel administration, regarding the basis and procedures to be followed for:
>
> . . . .
> (13) Agreements between agencies and certified exclusive bargaining representatives providing for grievance procedures and collective negotiations on all personnel matters over which the appointing authority of the appropriate bargaining unit of such agency may lawfully exercise discretion.

RCW 41.06.150(13). Under this authority, the Board adopted the merit system rule at issue in this case, WAC 356-15-110, set out above, as well as WAC 356-42-055, which provides for the grievance arbitration procedure used here. Nothing in either the merit system rules or the collective bargaining agreement, however, provides for judicial review of an arbitration decision.

■■ Article 4, sections 1 and 6 of the Washington Constitution grant the superior court inherent power to review an administrative decision. *Bridle Trails Comm'ty Club v. Bellevue*, 45 Wn. App. 248, 251, 724 P.2d 1110 (1986) (referring to the inherent power as "constitutional certiorari"). This is the only theory under which the Department petitioned for review.[3]

As a general proposition, courts have inherent power to review agency action "to the extent of assuring that it is not arbitrary and capricious. . . ." *Pierce Cy. Sheriff v. Civil Serv. Comm'n for Sheriff's Employees*, 98 Wn.2d 690, 694, 658 P.2d 648 (1983). Arbitrary and capricious action is "willful and unreasoning action, without consideration and in disregard of facts and circumstances[;] [w]here there is room

---

[3]While the petition for review in the Superior Court included a complaint for declaratory judgment, that complaint was apparently abandoned. It is not argued here, so it is deemed waived. *Department of Social & Health Servs. v. Personnel Bd.*, 61 Wn. App. 778, 781 n.1, 812 P.2d 500 (1991) (citing *Van Geest v. Willard*, 27 Wn.2d 753, 769, 180 P.2d 78 (1947)).

for two opinions, action is not arbitrary and capricious even though one may believe an erroneous conclusion has been reached." *Pierce Cy. Sheriff*, 98 Wn.2d at 695.

This court recently concluded that inherent review is the appropriate way to correct an arbitrator's error under certain circumstances and when no other specific method is provided for. *Department of Social & Health Servs. v. Personnel Bd.*, 61 Wn. App. 778, 783, 812 P.2d 500 (1991) (affirming superior court's refusal to exercise inherent review). *See also Bridle Trails*, 45 Wn. App. at 253 (inherent review will not be granted when either direct appeal is provided by ordinance or statute or statutory certiorari pursuant to RCW 7.16.040 is available).

Here, nothing in the agreement or the merit system rules on grievance arbitration provides for judicial review. The general arbitration statute, RCW 7.04.010, does not apply to agreements between employers and employees unless specifically provided in the labor agreement. *Grays Harbor Cy. v. Williamson*, 96 Wn.2d 147, 151 n.2, 634 P.2d 296 (1981). The agreement here makes no such provision.

Further, statutory certiorari under RCW 7.16.040 is unavailable as a means for review. Three criteria must be met for review under that provision: (1) the action must be one of an inferior tribunal or officer; (2) it must be "exercising judicial functions"; and (3) there must be no other avenue of review or adequate remedy at law. Since the very purpose of arbitration is to submit disputes to a process that is less formal, speedier, and generally less vexatious than litigation, it is unlikely that the Personnel Board here was performing a judicial function when it served as the agreed-upon arbitrator. *See Williamson*, 96 Wn.2d at 153 (suggesting, but not deciding, that arbitration is not generally a judicial function).

We conclude that because no other means of review was available, and because there is a compelling need for an avenue to review decisions involving allegations of improper expenditures of public moneys, the Superior Court properly

exercised its inherent power of review in this case.[4] *See Bridle Trails*, 45 Wn. App. at 252 (granting constitutional certiorari is always discretionary with the superior court and cannot be mandated by anyone, including a higher court; refusal to exercise inherent powers of review must be accompanied by tenable reasons for the refusal).

Having determined that the Superior Court's exercise of inherent review was proper, we review its conclusion that the arbiters' decision was arbitrary and capricious. *Pierce Cy. Sheriff v. Civil Serv. Comm'n for Sheriff's Employees, supra*. We conclude that it was not.

■ ■ We begin by noting that exceptional deference is given to the decision of arbiters, particularly in the context of labor relations. *See, e.g., United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 4 L. Ed. 2d 1424, 80 S. Ct. 1358 (1960) (federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards). Arbiters are under no obligation even to give reasons for their awards. *United Steelworkers of Am.*, 363 U.S. at 598.

The superior court judge recognized this deference, noting in her oral remarks that arbitration decisions are not generally subject to review by courts. Nevertheless, the Superior Court reviewed the decision and concluded that it was arbitrary and capricious on its face because the award failed to address whether the past practice of the Department of Agriculture was in conformity with the merit system rules.

■ Because the arbiters' award did not state reasons for the decision, we look at what the arbiters did. We conclude that the arbiters applied article 14.3 of the agreement, which reads:

Neither party to this Agreement shall make *unilateral* changes in the terms of this Basic Agreement or Supplemen-

---

[4]We are unpersuaded by the Personnel Board's argument, based on language in *Grays Harbor Cy. v. Williamson, supra*, that other methods of review are available, but that the Board has no obligation to specify what they may be.

tary Agreements pending settlement of the outstanding differ-
ences through mutually agreeable procedures.

(Italics ours.) Collective Bargaining Agreement article 14.3.
We acknowledge that the stipulation that the parties sub-
mitted for arbitration referenced only article 5.6 of the
agreement. The stipulation did not limit the Board's con-
sideration only to that provision, however. The question
presented to the Board was:

> [D]id the Department of Agriculture violate and or misapply
> the provisions of Article 5.6 of the Collective Bargaining Agree-
> ment and Merit System Rule, WAC 356-15-110, by *unilaterally*
> changing long-standing practice regarding the method of com-
> pensation provided to employees for call-back for work on
> scheduled days off or holidays?

(Italics ours.) We conclude that by framing the question in
this way, the petitioners invited the Board's consideration of
article 14.3 of the agreement.

When the agreement was negotiated in 1982, the method
used to calculate the proper amount of call-back payments
— one penalty payment for each call-back shift worked —
was longstanding and unquestioned. The Department
changed the payment practice on the basis of Salisbury's
memo alone. It is undisputed that the Department did not
consult the employees or the Union in advance. This conduct
certainly raises a debatable issue as to whether the Depart-
ment unilaterally changed the terms of the collective bar-
gaining agreement, in violation of article 14.3. The Board's
implicit decision that such a change in the call-back pay-
ment scheme constituted a breach of the agreement was not
arbitrary and capricious. Nor did the Board act in disregard
of facts and circumstances when it chose to address the
*process* used by the Department to change the payment
schedule rather than the *reasons* for the change.

Of course, our conclusion that the Board acted within its
authority in proceeding as it did does not suggest that we
agree or disagree with the current call-back payment pro-
cedure. As the petitioners themselves acknowledge, the
Department is not necessarily bound indefinitely to con-

tinue making call-back payments as it did before the 1986 memo. However, a directive to change the procedure must come from an appropriate body and be based on valid reasons. It cannot issue from the Department of Agriculture itself.

Reversed and remanded for reinstatement of the arbiters' decision.

PETRICH, C.J., and ALEXANDER, J., concur.

Review denied at 120 Wn.2d 1003 (1992).