140 P.3d 636 (2006)
Esther JONES, Appellant,
v.
PERSONNEL RESOURCES BOARD, et al., Respondents.
No. 33583-2-II.
Court of Appeals of Washington, Division 2.
August 8, 2006.
*637 William Michael Hanbey, Attorney at Law, Olympia, WA, for Appellant.
Linda A. Sullivan-Colglazier, Kara Anne Larsen, Office of Attorney General, Olympia, WA, for Respondents.
PENOYAR, J.
¶ 1 Esther Jones, a state employee covered by a collective bargaining agreement, is appealing a Thurston County Superior Court ruling denying her a writ of certiorari. The writ would have allowed her to appeal an unfavorable Personnel Resources Board (PRB) arbitration decision in an action Jones brought against her employer, the Washington State Employment Security Department (ESD), after Jones received negative comments on her employee performance evaluation. The superior court determined that the PRB is not exercising a judicial function when it conducts these types of arbitrations and, therefore, a statutory writ of certiorari is not available. We affirm.

FACTS

I. THE EMPLOYEE EVALUATION
¶ 2 The ESD promoted Jones to a Program Coordinator position. Her service began with a six-month trial period. In late October 2003, she underwent a series of performance evaluations, after which her supervisors gave her permanent status because she successfully completed the trial period.
¶ 3 In the course of the evaluations, Jones received some negative feedback from her supervisor, George Mante. Specifically, Mante described how Jones's lack of computer skills delayed an important project and required numerous hours of technical support. The evaluation also referred to comments Jones reportedly made in her interview suggesting that she had good computer skills. Jones later submitted a rebuttal, which was attached to her evaluation.

II. THE PRB ARBITRATION JONES
¶ 4 Jones filed a grievance with the ESD, claiming violation of its internal Employee Development Performance Plan (EDPP) process as defined by the Washington Department of Personnel under WAC 356-30-300, -305, -310.[1] After failing to obtain a satisfactory *638 result from the ESD's internal grievance process, Jones submitted her grievance for arbitration before the PRB.
¶ 5 Her petition for arbitration claimed that the ESD violated the process in its EDPP user's manual, that it hastily conducted her evaluation, and that the evaluation contained erroneous information and "derogatory comments concerning the employee's level of abilities to perform her duties." CP at 49. She further claimed that the ESD failed to follow the proper process for evaluations because the ESD did not identify the review's elements and it did not use a collaborative process that ensured her input.
¶ 6 Furthermore, Jones claimed that the ESD did not give her sufficient time to review and respond to the EDPP and that the ESD did not incorporate her input into the review. Jones also objected because she believed that the ESD failed to communicate her performance deficiencies to her during the review period and failed to give her sufficient training to ensure her success. Jones also believed that references to her initial interview were wrongful because the rules said that the evaluation was only to cover her conduct during the evaluation period.
¶ 7 In short, Jones claimed, "The evaluation as it currently stands is not a balanced documentation of all the duties the employee performed during the review period but focuses on one task. There is no balance of performance strengths, weakness and methods of improvement as outlined in the EDPP Guide, WAC 356-30-300 and WAC 356-30-310(1)." CP at 49. Jones asked the PRB to order the ESD to remove the offending language regarding her interview from her personnel file and to destroy the trial service evaluation.
*639 ¶ 8 On December 2, 2004, the PRB held an arbitration hearing at which both Jones and the ESD had legal representation. The PRB determined that Mante did not violate the evaluation process by referring to the comments that Jones made during the interview process. The PRB said that an employer may look back at an employee's past performance levels in previous positions to help set a standard for future evaluation. It also said that the comments did not harm Jones because she successfully completed the trial service period.
¶ 9 The PRB further concluded, "No violation of the process exists just because the parties disagree on how many suggested performance elements should be used or how thoroughly the elements are discussed." CP at 59. Ultimately, the PRB found that Jones did not meet her burden of showing a violation of the merit system rules.

III. SUPERIOR COURT
¶ 10 Jones then sued the PRB, the Department of Personnel, the ESD, and the State of Washington (hereafter PRB) seeking a writ of certiorari under RCW 7.16.040 or, in the alternative, for a constitutional writ of certiorari so the courts could review the PRB's decision. Jones claimed that an inaccurate performance evaluation harmed her because that evaluation remains in her personnel file and will be reviewed whenever she is considered for a promotion, transfer, or disciplinary action.
¶ 11 The superior court granted the PRB's motion for summary judgment, concluding that the PRB's grievance arbitrations are not a judicial function and, therefore, statutory certiorari was not available. The superior court also found that Jones failed to meet the requirements for constitutional certiorari and failed to show that the PRB's decision was arbitrary and capricious.
¶ 12 Jones now appeals.

ANALYSIS

I. STANDARD ON SUMMARY JUDGMENT
¶ 13 We review summary judgment orders de novo, performing the same inquiry as the trial court. Hisle v. Todd Pac. Shipyards Corp., 151 Wash.2d 853, 860, 93 P.3d 108 (2004). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Hisle, 151 Wash.2d at 861, 93 P.3d 108.

II. OBTAINING A STATUTORY WRIT OF REVIEW UNDER RCW 7.16.040
¶ 14 Statutory certiorari provides a means for courts to review the judicial actions of public officers or organs of government where there is neither a statutory right of appeal nor an adequate remedy at law. Washington Pub. Employees Ass'n (WPEA) v. Pers. Res. Bd., 91 Wash.App. 640, 652, 959 P.2d 143 (1998). The opportunity for a court of law to review administrative determinations provides "security against administrative injustice." WPEA, 91 Wash.App. at 652, 959 P.2d 143.
¶ 15 A court will issue a statutory writ of review under chapter 7.16 RCW if the petitioner can show that (1) an inferior tribunal or officer (2) exercising judicial functions (3) exceeded its jurisdiction or acted illegally, and (4) there is no other avenue of review or adequate remedy at law. RCW 7.16.040;[2]Clark County Pub. Util. Dist. No. 1 (Clark County PUD) v. Wilkinson, 139 Wash.2d 840, 845, 991 P.2d 1161 (2000). If any of these factors is absent, there is no basis for superior court review. Clark County PUD, 139 Wash.2d at 845, 991 P.2d 1161.
¶ 16 The parties apparently agree that the PRB qualifies as an "inferior tribunal" under the statute and that a writ of certiorari is Jones's only avenue of judicial review. Jones contends that the term "acted illegally" encompasses the "error of law" standard typically *640 employed by courts. App. Br. at 5; see WPEA, 91 Wash.App. at 653, 959 P.2d 143. The PRB does not take issue with this contention. Whether the PRB exercised a judicial function is the decisive issue on appeal; therefore, we address this question only.

III. ARBITRATION AS A JUDICIAL FUNCTION
¶ 17 Several Washington cases have suggested that the PRB is not exercising a judicial function when it arbitrates a dispute. Grays Harbor County v. Williamson, 96 Wash.2d 147, 152-53, 634 P.2d 296 (1981); Dep't of Agriculture (DOA) v. State Pers. Bd., 65 Wash.App. 508, 514, 828 P.2d 1145 (1992).
¶ 18 In Williamson, a non-governmental arbitrator awarded a worker back pay after finding that the county had violated the collective bargaining agreement. Williamson, 96 Wash.2d at 148-49, 634 P.2d 296. The supreme court held that no writ of certiorari was available because there was no governmental tribunal, board, or officer and because there were other avenues of review. Williamson, 96 Wash.2d at 153-54, 634 P.2d 296. The court went on to say:
Whether there was, in fact, an exercise of a judicial function in this case is less clear. Arbitration has been viewed as both nonjudicial or the exercise of a judicial function depending upon the context of the question. For example, when discussing "due process" in the arena of arbitration, we have drawn upon the underlying requirement of English and American jurisprudence to declare that parties have a fundamental right to be heard and to present evidence, after reasonable notice of the time and place of the hearing. On the other hand, when dealing with the actual nature of arbitration itself we have not considered the function judicial. Rather, it has been deemed a substitute for judicial action. It is a procedure designed to reach settlement of controversies, by extrajudicial means, before they reach a point at which one must resort to judicial action.
Williamson, 96 Wash.2d at 152-53, 634 P.2d 296 (internal citations omitted).
¶ 19 We adopted this reasoning in DOA. DOA, 65 Wash.App. at 514, 828 P.2d 1145. In that case, the State Personnel Board[3] arbitrated a dispute between the DOA and several of its employees. DOA, 65 Wash. App. at 509, 828 P.2d 1145. The superior court exercised its inherent power of review, which the Board challenged. DOA, 65 Wash. App. at 512, 828 P.2d 1145. We determined that the superior court properly exercised its inherent power of review because no other means of review, including a statutory writ of certiorari, were available to correct an arbitrator's error. DOA, 65 Wash.App. at 514-15, 828 P.2d 1145. Citing Williamson, we reasoned: "Since the very purpose of arbitration is to submit disputes to a process that is less formal, speedier, and generally less vexatious than litigation, it is unlikely that the Personnel Board here was performing a judicial function when it served as the agreed-upon arbitrator." DOA, 65 Wash. App. at 514, 828 P.2d 1145.
¶ 20 However, several years later, we held that a statutory writ of certiorari was available for the Washington Public Employees Association (WPEA) to appeal a PRB decision dismissing WPEA's unfair labor practice complaint. WPEA, 91 Wash.App. at 643, 959 P.2d 143. In that case, the PRB conducted a hearing at which witnesses provided sworn testimony and were subject to cross-examination and where the PRB received stipulated facts and exhibits. WPEA, 91 Wash. App. at 645, 959 P.2d 143. We determined that the PRB exercised a judicial function in that instance. WPEA, 91 Wash.App. at 649, 959 P.2d 143. Importantly, the issue in that case was whether the Office of Financial Management (OFM) had violated RCW 41.56.140(4) by unilaterally disapproving of a pay increase and refusing to engage in collective bargaining. WPEA, 91 Wash.App. at 645-45, 959 P.2d 143.
¶ 21 In WPEA, we distinguished our holding from cases involving personnel administration:
Personnel policy and management is "essentially an administrative or executive *641 function rather than a function historically or traditionally resting with the judicial branch of government." By contrast, before the creation of administrative bodies such as the PRB and the PERC, courts enforced public employees' collective bargaining rights.
WPEA, 91 Wash.App. at 650, 959 P.2d 143 (internal citations omitted). We further distinguished DOA as a case where the PRB was not performing a judicial function because it was acting as an arbitrator. WPEA, 91 Wash.App. at 651, 959 P.2d 143.
¶ 22 Jones claims that she is entitled to a statutory writ under RCW 7.16.040 because she had no statutory right of appeal from the PRB decision.[4] She claims that the PRB's decision was quasi-judicial in nature because the PRB took testimony from witnesses, accepted exhibits, and heard argument from counsel for both parties. She says that the language from DOA is only dicta and that the WPEA court should not have relied on it as precedent.
¶ 23 The PRB claims that Jones is not entitled to a statutory writ of certiorari because the PRB arbitration decision was not a judicial action. It claims that the PRB acts in an administrative or executive capacity, not in a judicial capacity, when it arbitrates employee grievances.

IV. DEFINING A JUDICIAL FUNCTION

A. The Raynes test
¶ 24 Courts have used a four-factor test to determine whether an action is judicial. Raynes v. City of Leavenworth, 118 Wash.2d 237, 244, 821 P.2d 1204 (1992). The factors are: (1) whether a court could have been charged with making the agency's decision; (2) whether the action is a type that courts have historically performed; (3) whether the action involves the application of existing law to past or present facts for the purpose of declaring or enforcing liability; and (4) whether the action resembles the ordinary business of the courts as opposed to that of legislators or administrators. Raynes, 118 Wash.2d at 244-45, 821 P.2d 1204.
¶ 25 Courts should give substantial consideration to the functions the decision making body performs and to whether the action is easily susceptible to judicial review. WPEA, 91 Wash.App. at 646-47, 959 P.2d 143 (citing Raynes, 118 Wash.2d at 243, 821 P.2d 1204).
¶ 26 The PRB argues that the Raynes test should not apply because courts use it to determine whether an action is judicial or legislative.[5] Because the issue here is whether an action is executive or administrative as opposed to judicial, the PRB claims that Raynes's applicability here is doubtful.
¶ 27 The PRB also argues that, even if the Raynes test is applied, its action here does not meet that test. It claims that resolving an employee grievance under a collective bargaining agreement is not a duty the court could have been charged with because it is essentially a personnel action. It argues that the grievance issue here was specifically a personnel matteran employee's performance evaluation. It claims that courts are ill equipped to act as super personnel agencies.
¶ 28 Jones agrees that interpreting a collective bargaining agreement within the state system is not a task that Washington courts historically performed. However, she claims the issue in this case is the interpretation of the WAC, which courts typically do.

B. Could the court have made the agency's decision?
¶ 29 Jones claims that courts are regularly charged with interpreting administrative codes and statutes. However, the PRB in this case analyzed the evaluation process set out in internal agency documents; it did not *642 apply or interpret the WAC. Therefore, Jones's particular grievance did not raise issues a court could have decided.

C. Is this action the type courts historically perform?
¶ 30 The parties hold different views about how to characterize the PRB's actions. Jones says the PRB held an adversarial hearing where it took testimony from witnesses and either admitted or rejected exhibits offered by counsel for both parties. The PRB claims that resolving an employee grievance under a collective bargaining agreement is not a duty the court could have been charged with.
¶ 31 To the extent that this was an adversarial hearing where the PRB heard evidence and determined rights and liabilities, this hearing resembled the adjudications that a court performs. However, the PRB is correct that this dispute is not the type that courts normally resolve. Although we consider the hearing's format (i.e., an adversarial hearing), the nature of the issue in dispute ultimately controls in determining whether courts historically performed the function in question. See WPEA, 91 Wash.App. at 649-50, 959 P.2d 143. This hearing was essentially a personnel matter.
¶ 32 The WPEA case demonstrates this distinction. In WPEA, the PRB held an adversarial hearing to determine whether a public employer committed an unfair labor practice affecting collective bargaining rights. WPEA, 91 Wash.App. at 645-45, 959 P.2d 143. Enforcement of collective bargaining rights is a task the judiciary traditionally performed, so we determined that statutory certiorari was appropriate in that case. WPEA, 91 Wash.App. at 650, 959 P.2d 143. We distinguished this traditional judicial function from personnel policy management, which is essentially an executive or administrative function, rather than a historically judicial function. WPEA, 91 Wash.App. at 650, 959 P.2d 143.

D. Declaring liability by applying law to facts
¶ 33 Jones claims that this factor is met because the PRB was determining whether the agency had violated the WAC sections setting forth the merit system rules. In arguing this, Jones mischaracterizes her underlying claim. Jones sued because she believed that the ESD violated the procedures set forth in the EDPP user's manual, an employee handbook. However, a handbook does not have the force of law. She does not allege a violation of a law on which a court may pass judgment. In other words, no law is being applied to facts.

E. Does the action resemble the ordinary business of courts?
¶ 34 Jones claims that the sole issue before the PRB in her case was interpreting the WAC. She tries to distinguish this from the arbitrations the PRB regularly holds, which involve claimed violations of a collective bargaining agreement.
¶ 35 We reject Jones's assertion that her case involves interpreting the WAC and hold that, because the heart of the matter involves interpreting a labor agreement, this action does not resemble a court's ordinary business. Rather, this is an administrative adjudication.

V. CONCLUSION
¶ 36 Because the trial court did not err in denying Jones a statutory writ of certiorari, we affirm the summary judgment order.
We concur: HOUGHTON, P.J., and ARMSTRONG, J.
NOTES
[1] These WACs, subsequently repealed effective July 1, 2005, read:

(1) Agencies shall evaluate the performance of their employees during their probationary or trial service periods and at least once a year thereafter.
(2) The annual evaluation will be conducted during the sixty-day period following the employee's anniversary date, except an agency can establish, on a consistent basis, a due date which better accommodates the agency's particular needs. The evaluation will cover the period ending with the established due date.
(3) Agencies will utilize the standardized employee performance evaluation procedures and forms prescribed by the director of personnel. The procedures shall include provisions whereby individual agencies may, with the approval of the director of personnel, supplement the process with special performance factors peculiar to the specific organizational needs.
(4) Each supervisor's annual evaluation shall include an assessment of his or her efforts toward achieving the objectives of the agency's affirmative action program, and responding to workforce diversity issues.
(5) The procedures and forms shall:
(a) Be designed to aid in communications between supervisors and subordinates and clarify duties and expectations.
(b) Be designed to inform employees of their performance strengths and weaknesses.
(c) Be based on performance toward the goals and objectives of the agency and its subunits.
(d) Include provisions for the counseling and the development of employees.
(6) Each employee whose work is judged unsatisfactory shall be notified in writing of the areas in which the work is considered deficient. Unless the deficiency is extreme, the employee shall be given an opportunity to demonstrate improvement.
(7) Allowing probationary employees to gain permanent status or trial service employees to gain permanent status in the class to which they have been promoted without completion of an evaluation may be regarded as neglect of duty, incompetence or insubordination on the part of the supervisor and may be cause for disciplinary action.
WAC 356-30-300 (2003).
(1) Permanent employees appointed from a voluntary demotion register to a class not previously held, a promotional register, or from the inter-system employment register shall service a trial service period of six months. The trial service period will provide the appointing authority with the opportunity to observe the employee's work and to train and aid the employee in adjustment to the position, and to revert such an employee whose work performance fails to meet required standards. Reversions shall be under the provisions of WAC 356-30-320.
(2) Employees who during their trial service period go on leave without pay or shared leave shall have their trial service period extended by the number of calendar days they are on leave without pay or shared leave, including any intervening nonworking days.
(3) Employees shall have their trial service period extended by the number of calendar days in excess of thirty in which the employee is not at work, including any intervening nonwork days, if:
(a) Work is missed due to sick leave, vacation leave, military training leave, or miscellaneous leave; or
(b) Work is missed by employees of the departments of social and health services, corrections, veterans affairs, or natural resources due to an assault that occurred on the job and who are receiving compensation in an amount equal to full pay, as provided in chapters 72.01 and 72.09 RCW; or
(c) Work is missed due to any combination of leave identified in (3)(a) and (b) of this section which when added together exceed thirty calendar days.
(4) Work missed during the trial service period due to holidays shall be counted as part of the required trial service period.
(5) When an employee accepts a temporary appointment to a higher class in the same series in the same work unit while serving in a trial service period, the trial service period shall continue for the lower class.
(6) When an employee is appointed to a higher class while serving in a trial service period, the trial service period for the lower class and the new trial service period for the higher class shall overlap provided that the higher and lower classes are in the same or a closely related field. The employee shall complete the terms of the original trial service period and be given permanent status in the lower class. Such employees will also be granted the rights normally accruing to trial service for the remainder of the trial service period in the higher class.
WAC 356-30-305 (2003).
(1) During the trial service period, supervisor shall counsel the trial service employees to inform them of their work performance. The counseling will inform the employees of their strengths, weaknesses, and methods of improvement. In addition, it shall include a signed acknowledgment by the employee of the supervisory evaluation.
(2) The director shall make the training services of the department of personnel available to all agencies requesting aid in developing a training program for trial service personnel.
WAC 356-30-310 (2003).
[2] writ of review shall be granted by any court, except a municipal or district court, when an inferior tribunal, board or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, or one acting illegally, or to correct any erroneous or void proceeding, or a proceeding not according to the course of the common law, and there is no appeal, nor in the judgment of the court, any plain, speedy and adequate remedy at law.
RCW 7.16.040
[3] Before June 30, 1993, the Washington State Personnel Board (SPB) performed the duties now performed by the PRB. WPEA, 91 Wash. App. at 644 n. 2, 959 P.2d 143.
[4] She also claims that, in the alternative, a constitutional writ provides a similar means of redress where a statutory writ does not apply. However, Jones does not argue this point in her brief or cite any authority. Therefore, we need not consider the issue. See RAP 10.3(a)(5): Keever & Assocs. v. Randall, 129 Wash.App. 733, 741, 119 P.3d 926 (2005) (when an issue is not argued, briefed, or supported by citation to the record or authority, it is generally waived).
[5] Although the action challenged in Raynes was a city zoning ordinance, that case also noted that no clear line can be drawn between judicial, legislative, and administrative functions. Raynes, 118 Wash.2d at 243, 821 P.2d 1204.