[No. 65036-0-I.   Division One.   March 28, 2011.]

DA-ZANNE PORTER ET AL., *Respondents*, v. SEATTLE SCHOOL
DISTRICT NO. 1 ET AL., *Appellants*.

*Jeffrey A.O. Freimund* (of *Freimund Jackson Tardif & Benedict Garratt PLLC*), for appellants.

*Keith P. Scully* (of *Newman & Newman, Attorneys at Law, LLP*), for respondents.

*David A. Stolier* and *Marilee J. Scarbrough* on behalf of Washington State School Directors' Association, amicus curiae.

¶1 BECKER, J. — The Seattle School District Board of Directors voted to approve the *Discovering* series of textbooks by Key Curriculum Press as the basic math materials for district high schools. Three members of the community challenge the decision as arbitrary and capricious. We

conclude the decision of the Board must be affirmed because however much the challengers may believe the Board should have disapproved the books, the record establishes there was room for two opinions and we cannot say the Board failed to give due and honest consideration to its decision.

¶2 A statute provides that persons "aggrieved by any decision or order of any school official or board" may appeal to the superior court within 30 days. RCW 28A.645.010. Notwithstanding a statute directing that an appeal to the superior court is to be heard de novo, RCW 28A.645.030, there is no dispute that in the present case, judicial review is limited to whether the Board acted arbitrarily, capriciously, or contrary to law. *See Haynes v. Seattle Sch. Dist. No. 1*, 111 Wn.2d 250, 253-54, 758 P.2d 7 (1988), *cert. denied*, 489 U.S. 1015 (1989). This limitation upon review of a nonjudicial decision by an administrative agency is a function of the doctrine of separation of powers. *Household Fin. Corp. v. State*, 40 Wn.2d 451, 244 P.2d 260 (1952).

¶3 According to the certified record of the Board's proceedings in this matter, the Seattle School District last adopted high school math books in 1992. By 2008, many of the books were damaged and there were not enough for all students. Five different series of math textbooks were being used. The school district began a process for choosing new high school math textbooks in October 2008.

¶4 For the process of choosing new textbooks, a statute calls for appointment of an "instructional materials committee" to make a recommendation to the Board. RCW 28A.320.230(1)(c). More than half the committee must be professional staff; the remaining members may include parents. RCW 28A.320.230(1)(c). The Board can only approve or disapprove the recommendation of the instructional materials committee. RCW 28A.320.230(1).

¶5 In the Seattle School District, the instructional materials committee oversees the creation and work of an adoption committee. The adoption committee creates text-

book selection criteria, reviews textbooks and community input, and recommends a set of textbooks for adoption.

¶6 The adoption committee for the selection of core math materials began by reviewing 15 different series in January 2009. The committee used an initial screening form to rank books. The committee selected three, including the *Discovering* series, as finalists for a more comprehensive review that was conducted in February and March 2009. As part of their review, the committee questioned teachers who had used the texts and read a summary of 600 textbook reviews by district high school students. After discussion and debate, the committee reached a consensus to recommend the *Discovering* series. Fourteen members said they could support the recommendation and two abstained.

¶7 At the end of March, the instructional materials committee approved the recommendation of the adoption committee and presented it to the Board. Board members received e-mails from math teachers and community members who were critical of the *Discovering* series. Much of this criticism reflected a concern that the *Discovering* series promotes an experimental, inquiry-based method of teaching math that, according to critics, does not work as well for most students as the more conventional method of direct or explicit instruction. The Board received charts and graphs purporting to show that where district schools had used inquiry-based math in the past, student test scores declined as compared to state averages, particularly among students for whom English is a second language.

¶8 Fueling the criticism was a curriculum study published on March 11, 2009, by the state Board of Education. Also known as the "Strategic Teaching" study, this review was prepared by two university math professors, Dr. Guershon Harel and Dr. W. Stephen Wilson. The State Board asked them to evaluate the *Discovering* series and three other math textbook programs. *Discovering* and two other series had been initially recommended by the state superintendent of public instruction earlier in the year. Harel and Wilson concluded that none of the four programs were

"mathematically sound." They criticized the *Discovering* series in particular as "mathematically unsound" with respect to certain aspects of the topics they reviewed. For example, they stated that the problems in the series "give students the opportunity to develop a beginning understanding of linear functions, equations, and inequalities but not to consolidate the understanding into the big ideas of mathematics." They did not like the presentation of problems and material "through small steps in the form of sequences of tasks." They found the text "consistently generalizes from empirical observations without attention to mathematical structure and justifications." They also faulted the series for overemphasizing the use of calculators.

¶9 It is important to note that the terms "mathematically sound" and "mathematically unsound" are not specifically defined in the study. In a response to the Harel and Wilson study, Key Curriculum Press stated that the issues the study raised "do not appear to be with the mathematics" of the textbooks.

> It is incorrect to refer to the DM [Discovering Mathematics] books as "mathematically unsound"; there are no mathematical errors in the DM books. Rather, the study claims that the DM books are not "axiomatically" sound and inherently asserts its premise that mathematics not taught from the more traditional axiomatic foundation is a "distortion" of mathematics. With this instructional prejudice, the authors of the study could not effectively evaluate the mathematical content.

¶10 When the state superintendent included the *Discovering* series in its initial recommendations, the algebra text had passed a review for "mathematical soundness" by two mathematicians, Dr. George Bright and Dr. James King. These reviewers stated that the *Discovering* series in general "strikes a very good balance between teaching general concepts/skills (e.g., transformations of functions) and specific concepts/skills related to quadratic functions (e.g., equation of the line of symmetry of a parabola). The mathematics is developed coherently (and soundly)." They

commented that different mathematicians will potentially have different views on the best way "to present an idea so that it is clear. . . . We were looking for evidence that materials provided opportunities for students to develop mathematical understanding that would be rich and deep, as opposed to compartmentalized."

¶11 District staff and concerned community members alerted the school board to the two mathematical soundness studies. Among the commentary received by the Board were letters from two local university math professors, John Lee of the University of Washington and Robbin O'Leary of Seattle Pacific University. Lee was "impressed" with the graphic presentations, the inquiry activities, and the exercises in the geometry text of the *Discovering* series, and he praised the book for its "intellectual honesty." But he thought the author had unwisely delayed treatment of proofs to the end of the book, which might foster the dangerous impression that mathematical truths are "nothing but a bunch of conjectured generalities based on empirical experience." He recommended that the Board reject the book: "It represents a highly risky and experimental approach to teaching geometry, and I think the experiment, while well-intentioned, is unlikely to have the desired effect." O'Leary disputed Lee's observations about the delay in the treatment of proof. She said the book actually began addressing proofs by the second chapter. She "spent time looking in depth" at the teacher's edition of the text, the assessment materials, and a supplement on the treatment of proof. "There is real assistance in this program for teachers in guiding students toward an understanding of geometry, particularly the use of proof."

¶12 On April 8, 2009, district staff presented a notebook to the Board with information about the various materials considered by the adoption committee. The materials included the Harel and Wilson study and the Bright and King study. Also included were the adoption committee's reasons for and concerns about its recommendation. The Board heard public testimony by speakers for and against ap-

proval. Mark Ellis, a district math teacher for 23 years, made a presentation on behalf of the adoption committee. He said some Seattle high schools used the five current textbook series to teach math either by explicit instruction, inquiry-based instruction, or some blend of the two. As a committee member, he wanted a text that would provide a single unified curriculum while allowing high schools to continue to use their own preferred teaching method. Ellis said the *Discovering* series was preferable to other texts considered in that it would support both direct and inquiry-based instruction. He also said the books had good skills building practice, good conceptual overview, helpful instructions for parents, condensed lessons for skills mastery and tutoring, and good assessment tools for teachers to gauge ongoing student learning. John Boyd, principal of Chief Sealth High School, testified that he had discussed the *Discovering* books with each of the district's high school principals and program managers and they unanimously supported approval of the series.

¶13 At this meeting, some of the directors made comments. One director, who later voted for approval, said he found it helpful to review the materials representing viewpoints critical of the *Discovering* series, including the Harel and Wilson study. Another director, who later voted against approval, said he telephoned the San Diego school district where the *Discovering* series had been used and learned that San Diego abandoned the books after two years.

¶14 On April 22, 2009, the Board heard more public testimony. The district superintendent presented a "School Board Action Report" itemizing the various reports reviewed by the adoption committee, including the Harel and Wilson study. Positives and negatives of the different series as identified by the adoption committee were listed in a chart side by side for comparison.

¶15 The board members discussed their reasons for supporting or opposing approval of the committee recommendation. One concern of those in favor was the need to get new books. They did not want to wait another year for

another possibly contentious recommendation while students continued to use damaged texts. There was discussion of the conflicting expert opinions. Some members lamented the lack of unbiased, scientific assessment of student outcomes based on textbooks. Director Sherry Carr gave several reasons for approval, including that she had tried out the materials with her own daughter.

¶16 On May 6, 2009, the Board again heard public testimony. Those testifying against approval included two of the petitioners in this action, former math teacher Martha McClaren and University of Washington climatology professor Cliff Mass. A representative of the state superintendent reported that although the *Discovering* series was one of three sets of textbooks included in the state superintendent's initial recommendation, the state superintendent had now made a final recommendation for one series by another publisher. But, she clarified, the state superintendent had declared that "virtually any of the reviewed curricula" could be used successfully.

¶17 The board members debated. Director Carr said that the adoption committee presented *Discovering* as "a balanced set of materials. I tested this claim through a live student demonstration and was satisfied that it does offer both inquiry based and direct instruction." She emphasized that the *Discovering* series was supported by the state superintendent's Bright and King soundness study, the adoption committee, all district high school principals, and all academic administrative officers.

¶18 The Board ultimately approved the *Discovering* series by a four to three vote on May 6, 2009.

¶19 Petitioners challenged the decision in King County Superior Court. The court concluded that the board decision was arbitrary and capricious and remanded the matter back to the Board for further consideration. The Seattle School District appeals.

¶20 This court stands in the same position as the superior court. *Wenatchee Sportsmen Ass'n v. Chelan County,*

141 Wn.2d 169, 176, 4 P.3d 123 (2000). Those challenging the board decision bear a heavy burden, particularly because it was based on complex and technical factual matters at the heart of the Board's expertise. *See Hillis v. Dep't of Ecology*, 131 Wn.2d 373, 396, 932 P.2d 139 (1997).

¶21 The challengers rightly say that the arbitrary and capricious standard is not a rubber stamp and cannot be met simply by showing that an adequate number of meetings were held or that deliberations took a certain amount of time. Nevertheless, it is a deferential standard. "Arbitrary and capricious" agency action is "wilful and unreasoning action, action without consideration and in disregard of the facts and circumstances of the case. Action is not arbitrary or capricious when exercised honestly and upon due consideration where there is room for two opinions, however much it may be believed that an erroneous conclusion was reached." *Sweitzer v. Indus. Ins. Comm'n*, 116 Wash. 398, 401, 199 P. 724 (1921).

¶22 Applying this standard to the record before us, we cannot find that the Board failed to give honest consideration to the alleged deficiencies of the *Discovering* series. The Board was aware that Harel and Wilson viewed the books as "mathematically unsound." The Board was aware that the state superintendent did not select the *Discovering* series as its final recommendation. And the Board was aware of anecdotal evidence that many teachers and parents have difficulty using inquiry-based math and find its methods ineffective. But the Board was also aware that other mathematicians viewed the books favorably. The adoption committee, including experienced high school math teachers among the district's own staff, recommended the *Discovering* series because it supported flexibility in instruction methods, including explicit mathematics instruction for struggling students.

¶23 The challengers believe the supporters of the *Discovering* series lack credibility. But it is not the role of a reviewing court to weigh the credibility of experts. *US W.*

*Commc'ns, Inc. v. Utils. & Transp. Comm'n*, 134 Wn.2d 48, 62, 949 P.2d 1321 (1997).

¶24 The challengers argue that the adoption committee process was biased in favor of inquiry-based math. They say teachers and community members willing to publicly question reform methodology were pointedly excluded. The record does not support this allegation, and even if it did, there was not a timely challenge to the committee selection process. *See* RCW 28A.645.010. The challengers also contend the committee used biased criteria in their screening in order to skew the process in favor of an inquiry-based textbook. A reasonable person, however, could readily conclude that the criteria were fair and balanced.

¶25 As evidence of arbitrary and capricious decision making, the challengers cite Director Carr's explanation that she was voting for the *Discovering* series based in part on her own experience in trying out one of the books with her daughter. They contend her remarks show that the Board's majority did not consider the impact of their decision on the student population as a whole. This argument takes Director Carr's remark out of context. Her anecdote was meant to illustrate that the lesson in the book lent itself to direct instruction in combination with an inquiry-based approach. A decision maker does not exhibit irrationality simply by reflecting upon her personal experience.

¶26 The challengers also contend that given the evidence in the record of declining math test scores, the Board had no reasonable alternative except to disapprove the *Discovering* series. But the evidence was not that compelling. It was based on a different series of textbooks and did not attempt to rule out other variables. The record provides some support for the argument that the *Discovering* series will perpetuate and worsen the gaps in math achievement between high and low performing groups of students, but it also provides some support for the argument that it will help Seattle schools overcome those gaps. On this record, there was ample room for two opinions.

■■ ¶27 The challengers finally contend the Board's decision was contrary to law, invoking the state constitutional mandate of article 9. It is the state's paramount duty to make ample provision for the education of all children residing within its borders, "without distinction or preference on account of race, color, caste, or sex." WASH. CONST. art. 9, § 1. They argue that the evidence of declining test scores proves that ample education is not being provided for all students and that racial minorities are disproportionately damaged by inquiry-based math. But article 9, by its express language, places a duty only on the State, not on school districts. *Tunstall v. Bergeson*, 141 Wn.2d 201, 233, 5 P.3d 691 (2000), *cert. denied*, 532 U.S. 920 (2001). It is true that article 9 would support a remedy if it were shown that de facto segregation is depriving children of necessary educational opportunities. *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 149 Wn.2d 660, 682, 72 P.3d 151 (2003). That showing is not made here.

¶28 In summary, the record does not show that the Board failed to give due and honest regard to facts and circumstances bearing on the recommendation to approve the *Discovering* series. There is no basis for concluding that the Board was willful and unreasoning in coming to its decision. The challengers have not met their heavy burden of showing that the Board acted arbitrarily, capriciously, or contrary to law.

¶29 The decision of the superior court is reversed. The decision of the Board is affirmed.

APPELWICK and SCHINDLER, JJ., concur.