**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| CHANDRA N. HAMPSON, as director of Seattle School District No. 1, | No. 83960-8-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| SEATTLE SCHOOL DISTRICT NO. 1, a municipal corporation, | |
| Respondent. | |

MANN, J. — The Seattle School District No. 1 School Board investigated whether School Board Director Chandra Hampson violated the school's antiharassment and bullying policy. After the investigation, the Board found that Hampson had violated the policy and directed her to follow it going forward. Hampson appeals and argues that the applicable standard of review of the Board's action is de novo. In the alternative, Hampson argues that the Board's action was arbitrary and capricious, and contrary to law. We affirm.

I.

Seattle School District No. 1 (District) is the biggest public school district in Washington. The District is governed by a board of seven publicly elected directors

serving four-year terms (Board). The Board hires and evaluates the District superintendent, sets District policies, establishes District budgets, adopts instructional materials, and the directors serve as community representatives to the District and on behalf of the District. RCW 28A.320.015(1)(a)-(c).

In 2017, the Board enacted policy No. 5207 (HIB Policy) to prohibit harassment, intimidation, and bullying (HIB) directed towards District employees or volunteers. The HIB Policy applies to employees, students, and Board members.[1]

The HIB Policy refers to "repeated and/or unreasonable actions of an individual (or group) directed towards an employee or volunteer (or a group of employees or volunteers) that is intended to intimidate, bully, degrade, or humiliate." HIB "includes written messages or images (including those that are electronically transmitted), verbal comments, or physical acts." To be considered HIB, the messages, images, comments, or acts must:

- Physically harm an employee or volunteer or damage the employee's or volunteer's property; or
- Have the effect of substantially interfering with an employee's or volunteer's work environment; or
- Be so severe, persistent, or pervasive that it creates an intimidating or threatening work environment; or
- Have the effect of substantially disrupting the orderly operation of the work place.

In September 2020, two Black District employees submitted a memorandum to the Board entitled Bullying, Intimidation, and Anti-Black Racism. The employees alleged antiblack and intersectional racism by Director Hampson and then-Director

---

[1] The Policy has since been repealed and replaced by administrative guidelines governing workplace civility. Minutes, Seattle Pub. Schs., Regular School Board Meeting (July 6, 2022).

Zachary DeWolf in response to their ongoing work on a new draft antiracism policy, Policy 0040. The employees specifically alleged that Directors Hampson and DeWolf "orchestrated [a] campaign of bullying, escalating intimidation, gaslighting, and retaliation."

The memorandum claimed that:[2]

1. Director Hampson began bullying [Doe] and attempted to discredit [Roe] in response to what she perceived as a loss of control or "ownership" over Policy 0040.

2. Director Hampson orchestrated with external stakeholders the overt silencing of Director [Roe's] board report, testimony, and undermining the credibility of her policy work.

3. Directors Hampson and DeWolf scheduled a meeting with [Doe] and [Roe] under false pretenses, so that they could continue to berate and discredit Director [Roe].

4. Directors DeWolf and Hampson modeled overt silencing and chastisement of Black women in leadership, displaying the often public consequences Black women face for addressing the racism which Hampson and DeWolf regularly claim a commitment to ending.

At the insistence of Directors Hampson and DeWolf, in November 2020 the District retained an external workplace investigator, Marcella Fleming Reed, to investigate the allegations.[3] Reed interviewed 20 witnesses, reviewed over 5,500 pages of documents including e-mails, policies, procedures, agendas, meeting minutes, and transcripts, and listened to various audio files. Reed's comprehensive report (MFR Report) was issued on August 5, 2021.

---

[2] The record uses pseudonyms for the District employees.

[3] Hampson welcomed the investigation, stating she "felt it was important to move forward with an investigation so that it was clear they were not being held to a different standard or process than other [Seattle Public Schools (SPS)] staff."

According to the MFR Report, in August 2019 the Board initiated policy efforts to enhance diversity, equity, and inclusion to benefit District students. Hampson was the primary stakeholder on the Board and she was interested in working on the new policy because of her previous policy drafting experience. Hampson proposed Policy 0040, which she had drafted while serving the Seattle Council Parent Teacher Student Association (SCPTSA). Policy 0040 was then circulated to certain District personnel for review and comment.

The two complaining employees began reviewing Policy 0040 by obtaining the perspective of families they thought the policy would most affect. In June 2020, Hampson wanted to expedite passing Policy 0040 in response to community sentiments about racial inequity. The employees expressed concerns that the current version of Policy 0040 would not adequately address the community feedback they received. They offered to revise the policy based on the feedback they received and circulate the new draft for subsequent community comment.

In August 2020, DeWolf and Hampson held a teleconference with the two employees over their progress on Policy 0040. According to the MFR Report, DeWolf was rude, unprofessional, raised his voice at the employees, and questioned the employees' veracity relating to work they had done on Policy 0040. DeWolf left the call for a previous obligation and Hampson continued the call 40 more minutes. Witnesses characterized Hampson's behavior as "abusive to staff throughout" by "yelling," being "disrespectful," and "challenging comments as untrue." The MFR Report also stated that the superintendent and her chief of staff called one of the employees to express concern after learning of the events.

In September 2020, DeWolf presided over an executive committee meeting. At the meeting, he and Hampson presented a Board Action Report on Policy 0040 to help advance the policy without further staff involvement. Departing from standard practice, the report was prepared by Hampson, not District staff. The MFR Report found that Hampson and DeWolf coordinated to limit the time available for the employees to speak about the policy. The report also found that Hampson interrupted their presentation and used inappropriate tactics to try to curtail their remarks.

The MFR Report determined that the allegations of intersectional discrimination were inconclusive. But the report did determine that Hampson used her position and authority to the detriment of the employees in violation of the HIB Policy. In August 2021, the District issued an "outcome letter" to convey the findings to Hampson. The letter stated that the report concluded that Hampson violated the HIB Policy, however, because she was not an employee of the District it was the Board's decision whether any corrective action should have been taken. The letter included a copy of the MFR Report, HIB Policy, and the District's prohibition against retaliation, Policy 5245 and Procedure 5245SP.

On September 9, 2021, the Board met and voted to provide Hampson and DeWolf a copy of the HIB Policy and instruct them that they had to comply with it.

Hampson filed this appeal in superior court under RCW 28A.645.010,[4] arguing that the trial court should review the record de novo and find that Hampson did not

---

[4] RCW 28A.645.010 provides:

(1) Any person, or persons, either severally or collectively, aggrieved by any decision or order of any school official or board, within thirty days after the rendition of such decision or order, or of the failure to act upon the same when properly presented, may appeal the same to the superior

-5-

violate the HIB Policy. The trial court disagreed and determined that the District's decision and subsequent Board action requiring Hampson to review and abide by the HIB Policy were not arbitrary and capricious.

Hampson appeals.

II.

Hampson first argues that the applicable standard of review is de novo because the Board's decision was quasi-judicial. We disagree.

Under RCW 28A.645.010, an aggrieved person may appeal the final decision of a public school official or the board of directors. Briggs v. Seattle Sch. Dist. No. 1, 165 Wn. App. 286, 291, 266 P.3d 911 (2011). We do not defer to the trial court's ruling, rather, we stand in the shoes of the trial court and review the school district's decision on the administrative record and the controlling standard of review. Porter v. Seattle Sch. Dist. No. 1, 160 Wn. App. 872, 879, 248 P.3d 1111 (2011).

Haynes v. Seattle Sch. Dist. No. 1, 111 Wn.2d 250, 253-55, 758 P.2d 7 (1988), clarified the standards of review for school district actions under RCW 28A.645.015.[5] Haynes explained:

> If the power exercised by an agency is essentially administrative, the superior court, upon appeal provided by statute, is limited to a consideration of whether the agency acted arbitrarily, capriciously, or contrary to law. If the administrative agency performs an essentially judicial function, the superior court, on appeal from a decision of the board, has, if there is a statute so permitting, the constitutional power to allow a trial de novo.

court of the county in which the school district or part thereof is situated, by filing with the secretary of the school board if the appeal is from board action or failure to act, otherwise with the proper school official, and filing with the clerk of the superior court, a notice of appeal which shall set forth in a clear and concise manner the errors complained of.

[5] Haynes discussed RCW 28A.88.010, the predecessor statute to RCW 28A.645.010.

<u>Haynes</u>, 111 Wn.2d at 254 (quoting <u>Francisco v. Bd. of Dirs.</u>, 85 Wn.2d 575, 578-79, 537 P.2d 789 (1975)). <u>Haynes</u> then stated that these principles are applied to RCW 28A.645.010:

> despite the clear language of [RCW 28A.645.030], a de novo review of an administrative agency's decision is only permissible when the agency acts in a quasi-judicial manner. Review under [RCW 28A.645.010] is limited to whether the agency acted arbitrarily, capriciously, or contrary to law in cases in which the agency acted in its administrative function.

<u>Haynes</u>, 111 Wn.2d at 254 (quoting <u>Yaw v. Walla Walla Sch. Dist. 140</u>, 106 Wn.2d 408, 413-14, 722 P.2d 803 (1986)).

In <u>Francisco</u>, the court identified four factors to determine whether an agency action is administrative or quasi-judicial: (1) whether this court could have been charged in the first instance with the responsibility of making the challenged decision, (2) whether the function of the agency is one courts have historically performed, (3) whether the agency performs functions of inquiry, investigation, declaration, and enforcement of liability as they stand on present or past facts under existing laws, and (4) whether the agency's action is comparable to the ordinary business of courts. 85 Wn.2d at 579.

Hampson fails to argue, and thus concedes, that factors one and two do not support de novo review.[6] Factors three and four establish that the action is administrative.

---

[6] Under the first factor, the challenged decision results from an internal investigation pertaining to an internal District policy. When the matters at issue are internal, an agency's determination is administrative. <u>Jones v. Pers. Res. Bd.</u>, 134 Wn. App. 560, 571, 140 P.3d 636 (2006). Under the second factor, courts do not perform internal reviews of personnel issues for compliance with internal policies. <u>Jones</u>, 134 Wn. App. at 571.

Under factor three, when the District adopted the MFR Report and required Hampson to review the policy, neither the District nor the Board applied facts to law. In Jones v. Pers. Res. Bd., 134 Wn. App. 560, 573, 140 P.3d 636 (2006), the court analyzed whether enforcement of a provision in an employee handbook is an administrative action. Reviewing the third Francisco factor, the court determined that "a handbook does not have the force of law." Jones, 134 Wn. App. at 573. There is thus no allegation of a violation of law which a court may pass judgment on—no law is being applied to fact. The HIB Policy is analogous. It is an internal policy enacted and enforced by the District and the Board. There is no applicable law, therefore, no law applied to fact. Francisco, 85 Wn.2d at 579.

Under factor four, the District's decision and application of the HIB Policy is not "comparable to the ordinary business of courts." Yaw, 106 Wn.2d at 414. The application of an internal policy is not a normal function of the courts. There is no binding law for the courts to apply, rather, interpretation of an internal policy. This is like an administrative adjudication, not a quasi-judicial function. Jones, 134 Wn. App. at 573.

"[A]s [courts] have said many times, the courts of this state are ill equipped to act as super personnel agencies." Wash. Fed'n of State Emps. v. State Pers. Bd., 29 Wn. App. 818, 820, 630 P.2d 951 (1981). And "the board's determination of what is in the best interests of the school district is not appropriately characterized as an application of law to fact, and the broad discretionary authority the statute confers upon the board does not resemble the ordinary business of the courts." Williams v. Seattle Sch. Dist. No. 1, 97 Wn.2d 215, 220-21, 643 P.2d 426 (1982).

Hampson further argues that the controlling cases do not apply in a case involving an elected school board representative because application of the HIB Policy to her is not a personnel matter. But this argument is unpersuasive. The action is administrative not just because it involves personnel matters, but because it satisfies the Francisco factors and is analogous to controlling case law. The District's decision and the Board's resulting action were administrative. Thus, the proper standard is whether the action was arbitrary and capricious, or contrary to law.

III.

Hampson argues that the Board's actions were arbitrary and capricious because it lacked any findings to establish that Hampson violated the HIB Policy. We disagree.

Arbitrary and capricious agency action is "willful and unreasoning action . . . without consideration and in disregard of the facts and circumstances of the case." Porter, 160 Wn. App. at 880. "Action is not arbitrary or capricious when exercised honestly and upon due consideration where there is room for two opinions, however much it may be believed that an erroneous conclusion was reached." Porter, 160 Wn. App. at 880.

The District hired an external, independent, and highly experienced workplace investigator, Reed, to examine Hampson and DeWolf's alleged HIB violations. The MFR Report resulted from 20 interviews with District staff and Board members conducted over an 8-month period, and the review of thousands of pages of e-mails, policies, meeting minutes, and transcripts. The District's review process adhered to its Policy 5010 for investigation and determination of complaints by District employees. The MFR Report reveals "due consideration." Porter, 160 Wn. App. at 880.

Hampson argues that the facts in the MFR Report reached the wrong conclusion. For example, Hampson argues that the e-mails did not show intent to harass the employees because they were sent to others. But the MFR Report concluded that the e-mails along with the conduct at the September 16 executive committee meeting, showed that Hampson intentionally coordinated to inappropriately curtail the employees' participation.

Hampson next argues that her conduct was not a part of a pattern and was not unreasonable because her conduct on the conference call and vocal criticisms of the employees were merely candid evaluations on job performance. But the HIB Policy does not require a pattern of conduct, but that the conduct be repeated, unreasonable, or both. The MFR Report concluded, with substantial evidence from witness reports, that during the conference call Hampson yelled and made abusive and disrespectful comments and questions. This is the type of unreasonable conduct that violates the HIB Policy.

"Where there is room for two opinions, an action taken after due consideration is not arbitrary and capricious even though a reviewing court may believe it to be erroneous." Hillis v. State, Dep't of Ecology, 131 Wn.2d 373, 383, 932 P.2d 139 (1997). Hampson may disagree with the outcome of the MFR Report, but that is insufficient. The District's decision was based on due and thorough consideration. The District's investigation, and Board's acceptance of the resulting report, were not arbitrary or capricious actions.

IV.

Hampson argues that the District's application of the HIB Policy was contrary to law because it prevents elected school board directors from using their discretion to make policy. We disagree.

When determining whether an agency action is contrary to law, we "accord substantial deference to the agency's interpretation of law in matters involving the agency's special knowledge and expertise." Overlake Hosp. Ass'n. v. Dep't of Health, 170 Wn.2d 43, 50, 239 P.3d 1095 (2010). The court is "ill-equipped to act as [a] super personnel agenc[y]." Wash. Fed'n of State Emps., 29 Wn. App. at 820. "The [g]overnment, as an employer, must have wide discretion and control over the management of its personnel and internal affairs." Binkley v. City of Tacoma, 114 Wn.2d 373, 386-87, 787 P.2d 1366 (1990).

Hampson argues that applying the HIB Policy to her conduct was improper. But as the trial court recognized, her claims cannot warrant judicial intervention. And Washington courts give great deference to an agency's interpretation of its own properly promulgated policy, especially where the policy concerns personnel operation. Taylor v. Burlington N. R.R. Holdings, Inc., 193 Wn.2d 611, 627, 444 P.3d 606 (2019). Hampson claims that Taylor does not apply because the HIB Policy does not involve "the education of children." But this distinction does not limit the deference to an agency employing an internal policy about personnel operations.

Hampson next argues that applying the HIB Policy to her would preclude her from adequately representing her constituents, her statutory role as an elected Board Director. RCW 28A.320.015. Nothing in the HIB Policy interferes with her statutory

authority to make policy. Rather, the policy required that she exercise her authority without harassment and bullying. The MFR Report found that Hampson failed to execute her authority as director without harassment and bullying, and the Board directed her to review the HIB Policy and abide by it going forward.

Finally, Hampson cannot now claim that the HIB Policy should not apply to her as a director after insisting on the investigation under the HIB Policy and stating, she "felt it was important to move forward with an investigation so that it was clear they were not being held to a different standard or process than other SPS staff."

The District's report and resulting decision by the Board were not contrary to law.

Affirmed.

_____
Mann, J.

WE CONCUR:

_____          _____
Bowman, J                                 Smith, C.J.